Mr. Chief Justice Sharkey
delivered the opinion of the court.
This was an information, in the nature of a quo warranto, instituted under the act of 1843, against the Commercial Bank of Manchester. To the information the corporation pleaded the charter, to which there were fourteen replications. A trial was had at the May term, 1845, of the Yazoo circuit court, which resulted in a verdict for the defendant. On the part of the state a new trial was moved for, on the ground of newly discovered evidence, which was granted; but the defendant excepted to the decision of the court in granting the new trial. The next trial also resulted in an acquittal of the bank, and the case comes up by writ of error on exceptions taken by the district attorney, during the progress of the trial.
The replications were all abandoned except the second and fourteenth, and the questions to be determined, arise under those replications.
The second replication is, in substance, that the subscribers failed to pay the first, second, and third instalments for stock, but gave notes for the amounts due, .which were discounted by the bank fraudulently, and with intent to evade the charter, and the proceeds placed to the credit of the subscribers. To this replication the defendant rejoined, that since the making *232 and discounting of such notes, to wit, on the 15th of February, 1838, with full knowledge that such notes had been taken in payment of stock in lieu of money, the legislature passed an act continuing said corporation, entitled “an act reducing the capital stock of the Commercial Bank of Manchester, and for other purposes.” The act is set out at length, and it is averred that the legislature thereby waived the said cause of forfeiture, and that the bank has not, (since the passage of said act, received anything but gold and silver for stock.
The fourteenth replication contains a general allegation that the subscribers for stock had wholly failed to pay as the charter required, and that such failure was with the consent of, and by contract with the corporation. To this the defendant rejoined the same act of the legislature, with the same averments contained in the rejoinder to the second replication.
The case having been submitted to the jury, the district attorney, on the part of the state, requested these charges, to wit: 1st. “ If the jury believe, fronrthe evidence, that since the 15th of February, 1838, the cashier, or teller, or clerks of said bank, as officers and agents of said bank, received either directly or indirectly from any one, the notes of non specie-paying banks, in payment for any part of the capital stock of said bank, they must find for the plaintiff.”
2d. “ If the jury believe, from the evidence, that since the 15th day of February, 1838, it was agreed between the cashier of said bank and William Minter, a holder of part of the capital stock of said bank, that said Minter, to make payment of his stock, and evade the charter of said bank, should procure the notes of said bank, which was then a non specie-paying bank; that said cashier should receive said notes, count out their amount in specie, and immediately take, or- receive back said specie, without Minter being at liberty to take the same from the bank, and that he should thereupon receive a certificate of stock, and that said Minter did so pay an instalment on his stock, and receive a certificate, they must find for the plaintiff.” The third charge presents, in substance, the same proposition. At the request of the defendant the court gave several charges *233 to the jury, and the plaintiff excepted to these several decisions of the court in refusing and giving the charges.
It is thus sure that two questions are presented. 1st. Was the act of the 15th of February, 1838, a waiver of the previous cause of forfeiture; and 2d. Did the court err in refusing to give the charges asked by the district attorney, and in giving those asked by the defendant 1
The question of- waiver is raised by a motion for judgment non obstante veredicto, predicated on the admission in the rejoinder, that the bank had, prior to the act of February, 1838, forfeited its charter, and that the forfeiture was not waived by the act.
The verdict and judgment seem to have been rendered on the 21st of November, 1845. On the 26th of the same month the district attorney moved to set aside the judgment, and for judgment non obstante veredicto, which was overruled. It is now objected that this motion was too late after judgment entered. That, like a motiqn in arrest of judgment, it must precede the entry of judgment, it being too late to arrest that which is already entered. This objection is quite technical, and yet it is in strict accordance with law. The objection is made, and there seems to be but one rule on the subject; and that is, that such a motion must be made immediately after the verdict, and before a judgment is rendered on the verdict. 2 Tidd’s Practice, 840.
We proceed then to the consideration of the charges of the court. Corporations, from their nature, act by agents. They can act in no other way. The directors are but agents; but as the business ef the corporation is conducted by them, their acts are regarded as corporate acts. But the sub-agents are subject in their transactions to the -general rules of agency, as applicable to the agents of individuals. Their unauthorized acts do not in general bind the corporation, unless they have been acquiesced in. The first charge was evidently too broad. It cannot be that a banking corporation is left, in all respects, entirely at the discretion of all its agents or servants.' The charge asked contains the broad proposition, that payments for stock may be *234 made to the cashier, teller, or any of the clerks, without any proof as to their authority to receive such payment. In the management of a corporation, different duties are assigned to different agents. It cannot be law that the whole machinery may be managed by any or all of the agents indiscriminately. To make a payment binding on the corporation then, it should be made to some agent who is authorized to receive payments. But the charge goes further. It would make any payment, made directly or indirectly, to any of the officers, binding on the corporation. This would extend to out-door transactions of an infinite variety of forms. It is sometimes customary for banks to employ messengers to deliver notices; if the charge asked be law, a payment made to such messenger, in the course of his daily excursions, would be binding on the corporation. On this hypothesis, every agent employed by a bank, may bring about a forfeiture of the charter.
The second charge asked is more limited. It confines the alleged illegal transaction to a contract or agreement made with the cashier. If the acts of the cashier are in all cases to be regarded as the acts of the bank or corporation, then it must be conceded that this charge should have been given. We have said that the cashier is but the agent of the corporation; and that his power is to be determined by the same rules which apply to. agents in general. The general rule is, that if an agent exceed his authority, his acts are not binding on his principal. This particular description of agency has been the subject of frequent adjudication, and the question must be regarded as in a great degree settled. The power of the cashier of a bank was considered by the supreme court of the United States, in the case of Fleckner v. The Bank of the United States, 8 Wheat. 338. The cashier had transferred a promissory note by indorsement, and his right to do so was questioned. Judge Story thought it necessary to make an argument of some length to show that he had power to indorse a note, and that too after such indorsement had been sanctioned by a vote of the board of directors. In speaking of the power of the cashier, the court said, “he is considered the executive officer, through whom, and by whom, *235 the whole’ moneyed operations of the bank in paying or receiving debts, or discharging or tranferring securities, are to be conducted. It does not seem too much, then, to infer, in the absence of all positive restrictions, that it is his duty as well to apply the negotiable funds, as the moneyed capital of the bank, to discharge its debts and obligations.” The quálification under which this general power is conceded to the cashier, is striking and not to be overlooked. The power can only be exercised “ in the absence of alhpositive restrictions.” The language admits of no other meaning than, if such restrictions do exist, then they limit the power of the cashier. As the cashier is held out to the world as the general agent of the bank in regard to its funds and securities, prima facie he is to be deemed as having authority to superintend the moneyed affairs, and no special authority need be proved. But if a bank chooses to limit his authority, it certainly has the power to do so. 3 Mason’s R. 506. This power results necessarily from the superior authority of the directors. The corporate functions are concentrated in them; the cashier is but an agent of their appointment. His duty is not prescribed by the charter, but originates with the directors, and may be extended or limited as they may think proper. From the general character of the agency, it may be incumbent on the bank to show the restriction or limitation. This does not change its effect when shown.
The case of Wyman v. Hallowell and Augusta Bank, 14 Mass. R. 58, is a decision to the same effect. A new bank was chartered by the same name with a previous one, and employed the same president and cashier. Affidavits were read tending to prove, that the new corporation had put in circulation the notes of the old one; and the cashier had declared that there was no difference between the notes of the old and the new corporation, upon the faith of which declaration the notes obtained currency. It was held that the officers who had so undertaken to pledge the credit of the bank, had acted- unwarrantably, and could not implicate the stockholders or company, who are supposed to rely upon the faithful and correct discharge of duty by their agents and servants. The stockholders, said the court, *236 would be in an extremely unsafe situation, if their property was bound by the irregular transactions, or by the declarations or confessions of their officers, beyond the legal sphere of their action.
It cannot be denied that the acts of the cashier of a bank, performed within the sphere or scope of his duty, are binding on the corporation. But what is the sphere of his duty? It extends no doubt to all acts which peculiarly pertain to his office, in the absence of any express regulation. But if there be an express regulation, that of course limits the sphere of his action. The directors may prescribe every duty he shall perform, and the manner of its performance, and the sphere of his authority is then confined within the limit so prescribed. And his authority may be from time to time changed or restricted.
This question as to the power of a cashier to bind the corporation, was again raised before the supreme court of Massachusetts, in the case of Salem Bank v. Gloucester Bank, 17 Mass. R. 28, and the court said, “ The directors are the agents of the company; the officers are its servants. . The duties of both are pointed out by statute, or prescribed in the by-laws, which are the promulgated will of the company. Acting within the limits of the authority thus given, the company is liable for their acts; but beyond those limits, they cannot bind their principals.” And again, in the case of Foster v. The Essex Bank, 17 Mass. R. 505, it was said the cashier could not, by his undertaking, make the bank answerable for a deposit, contrary to its usage, without previous authority or subsequent assent.
In the case of Everett v. The United States, 6 Porter’s Alab. R. 166, the transfer of a promissory note by the cashier of a bank, was sustained on the ground that it was within the scope of power ordinarily conferred upon the cashier, and yet the court admitted that the inference would not be conclusive ; that it would be competent to show that the indorsement was made in prejudice of the rights of the bank, in which case it would not be a valid transaction.
This question is very fully considered in the Treatise on Corporations, by Angel and Ames, 239, et seq., where the doctrine *237 of the foregoing cases is fully recognized, and no case has been found which holds the contrary. Many other decisions are there referred to in support of the same doctrine. The result of all these authorities seems to be that bank officers, acting within the scope of their power, may bind the corporation ; that the acts of the cashier, who is the general executive officer of the bank, ar e prima facie binding when performed in the discharge of the ordinary duties which belong to that officer, and that in order'to avoid such acts, it devolves upon the corporation to show a special restriction. And I go further; the restriction must not arise from the charter alone, but from a limitation imposed upon the cashier by the directors. Through the cashier the directors may doubtless violate the charter, unless they can show that he departed from his duties, as prescribed by them. But it is believed to be a clear and indisputable principle, that the cashier cannot cause a forfeiture of the charter by a direct and palpable violation of his authority or instructions. We repeat that the scope of his duty is limited by the regulations of the directors. They may confer on him, or permit him to exercise, the powers which are usually exercised by cashiers, and then his acts will be binding, but they may limit his power if they think proper. If they cannot do so, his authority is superior to theirs, and the franchise is placed entirely at his mercy. It was remarked, in one of the cases referred to, that there is a difference between the acts of a bank officer and a mere private agent in this, that persons dealing with a bank are presumed to know the extent of the agency, because it is limited by the charter, or by the proceedings of the directors, which are subject to the inspection of every one.
According to this view of the authorities, the charge asked does not accord with the law. Some qualification should have been added, to indicate to the jury that if the act of the cashier was in direct violation of the express instruction of the directors, the corporation was not bound by his acts. This was necessary, because the proof was explicit, that the board of directors had given positive directions that nothing but gold or silver-, or the notes of specie-paying banks should be received in payment *238 of stock, and charges must be given with reference to the evidence before the jury. There was no proof tending to show that the directors had acquiesced in any violation of the charter, if any such occurred, or that they even knew of the commission of such violation. If, under such circumstances, such an act as that referred to in the charge, be binding on the corporation there can be no limit to the power of the cashier. He may forfeit the charter, sell its property, or squander its money at pleasure. By the 7th section of the charter, the power to appoint and remove all officers, clerks and servants, is expressly conferred on the corporation, and the charter being silent as regards the duties of the cashier, it results that he derives his authority from the directors, by whom it may be limited.
We think, therefore, that the judgment must be affirmed.