#### (July 9, 1900.)

## WOOD LIVESTOCK COMPANY v. WOODMANSEE.
### [61 Pac. 1029.]

NEW TRIAL—DAMAGES—ORDER GRANTING.—In an appeal from an order granting a new trial, the record containing the evidence, and there appearing only a difference of some twenty or thirty dollars between the amount of damages shown by defendant's proofs, and that allowed by the jury, and the expense of a new trial would greatly exceed the amount of difference, a new trial should not be granted.

(Syllabus by the court.)

APPEAL from District Court, Fremont County.

Hawley & Puckett, for Appellant, cite no authorities on the point decided by the court.

P. Averitt and F. S. Dietrich, for Respondents.

An order granting a new trial will not be reversed on appeal unless it is made to appear that there has been a manifest abuse of discretion in granting a new trial. (*Brossard v. Mor-*

*gan,* 6 Idaho, 479, 56 Pac. 163; *Assurance Corp. v. Ross,* 123 Cal. 520, 56 Pac. 335; *Hamilton v. Nelson,* 22 Mont. 539, 57 Pac. 146; *Langston v. Ephriam,* 21 Wash. 282, 57 Pac. 808; *Ten Cate v. Sharp,* 8 Okla. 300, 57 Pac. 645; *Orchard Place Land Co. v. Lewis,* 53 Kan. 750, 37 Pac. 108; *White v. Pacific R. R. Co.,* 8 Utah, 56, 29 Pac. 1030.)

HUSTON, C. J.—This is an appeal from an order of the district court granting a new trial. The cause of action arose upon a contract for the sale and delivery by the plaintiff to the defendants of a lot of sheep consisting of three thousand seven hundred yearling ewes and one hundred and fifty buck lambs. The contract expressed the time and place of delivery, and amount to be paid, and the terms of payment, and also that said sheep were to be "free from scab or disease." It was also provided in the contract as follows: "3. In the event that the parties of the second part request and notice is given to the parties of the first part on or before March 15, 1897, the parties of the first part agree to buy back said ewes and rams at the purchase price mentioned above, and receive the same at Beaver Canyon, Idaho, April 15, 1897, and further agree to pay for three per cent in excess of the number counted out at delivery (this three per cent to cover winter loss liable to be sustained by said parties); also agree to pay ten per cent per annum on the amount advanced, viz., $2,000 from December 1, 1896, to April 15, 1897; also further agree to waive the payment of interest on balance of pay, viz., $5,040, due from the parties of the second part April 15, 1897, and drawing ten per cent interest per annum from November 1st until paid." The defendants having failed to meet the delayed payments as provided in the contract, plaintiff brought this suit to recover same. It is not denied by plaintiff that, at the time of the delivery of the sheep by the plaintiff to the defendants under the contract, a few of said sheep were afflicted with scab. This being so, it was optional with the defendants either to avail themselves of the option provided in the contract, and return the sheep as therein provided, or to retain the property, and bring their action for breach of contract. They elected to take the latter

course, in effect at least, by asserting their claim for damages in this suit.

The only question involved in this case would seem to be the amount of damages defendants are entitled to by reason of the fact that some of the sheep sold and delivered to them by the plaintiff were at the time of such delivery afflicted with scab. For any loss or damage, the proximate cause of which was the existence of the scab among the sheep sold and delivered by plaintiff to defendants under the contract, the defendants are entitled to recover. It appears by the record that immediately upon the discovery by the defendants that said sheep were afflicted with scab they advised the plaintiff, through its officers, of the fact, and that, acting under the advice of such officers, defendants took every available means to prevent the spread of the disease among the flock, and in so doing it appears from the evidence on the part of the defendants that they incurred an actual expense of $296.05. In addition to said last-mentioned amount, defendants claim that they lost six hundred and thirteen head of sheep, of the value of $2.50 per head. But it is by no means clear from the evidence that this loss was the result of, or justly attributable to, the existence of the scab among the sheep purchased by defendants from plaintiff. Mr. C. H. Woodmansee, one of the defendants, and the person principally in charge of the sheep after their delivery by the plaintiff to defendants, testifies: "We had six hundred and thirteen head of sheep die from the date of delivery up to shearing time in June." Again, the same witness testifies upon cross-examination: "I personally counted the sheep from the shearing pen. I do not know that the whole number six hundred and thirteen died. We were that many short is what I meant. The sheep included the Singleton sheep, and the Davis sheep, as well as the sheep we bought of the plaintiff's company. In the winter and spring I had purchased twelve hundred and seventy-six head of sheep from Mr. Singleton and Mr. Davis of Wilford. I received the Singleton sheep February 9th, and the Davis sheep March 29th. The ewes that I bought of Singleton were passed in with the Wood sheep. The rams were kept separate. Six hundred and thirteen head of the whole stock was

missing at shearing time." It cannot be contended upon any principle of law or equity that the plaintiff is chargeable upon this evidence with the loss of the six hundred and thirteen head of sheep as having been incurred by reason of said sheep sold by plaintiff to defendants being afflicted with scab at the time of delivery of same by plaintiff to defendants. The evidence is altogether too vague and inconclusive to support a right of recovery against the plaintiff for any portion of the six hundred and thirteen head. The answer of defendants also contains a counterclaim predicated upon an alleged unauthorized sale by the plaintiff of certain wool belonging to defendants. The evidence upon this point is conflicting, and the claim would seem to have been ignored by the jury. The record contains the following statement: "Thereafter the jury, being brought into court, returned a verdict in favor of defendants for $200, and the court, having found said verdict to be in improper form, further instructed the jury that they should deduct from the amount due plaintiff on the contract any amounts, if any they might find, due defendants by reason of their counterclaims." The jury thereafter returned a verdict in favor of plaintiff for the sum of $1,972.59. The greater part of appellant's brief is taken up with the discussion and elaboration of matters which are really not contested, to wit, the existence of scab among the sheep sold by plaintiff. By their verdict the jury would seem to have allowed defendants, as damages, about the sum of two hundred and seventy dollars. This is some twenty-six dollars less than the testimony on the part of the defendants shows their expenditures to have been on account of the existence of the scab among the sheep sold by plaintiff to defendants at the time of their delivery. The jury failed to find, evidently, that any loss of sheep by defendants was attributable to the scab as it existed in the band at the time of the delivery by plaintiff to defendants. The sheep were delivered as provided in the contract, to wit, on or about the 31st of October, 1896, and on the 21st of the following January, to wit, January 21, 1897, C. H. Woodmansee, one of the defendants, and a person who seems to have had the direct charge of the sheep, writes plaintiff that "the sheep are looking fifty per cent bet-

ter than they were when we received them; in fact, are fat." The evidence of any direct loss by reason of the existence of the scab among the sheep at the time of delivery is of the most unsatisfactory character, and, it is apparent, was so considered by the jury. We have examined the evidence in this case with the most scrutinizing care, and we are unable to see how, under the evidence, the jury could have arrived at a different conclusion. We find no error prejudicial to the defendants. in the instructions of the court.

The question brought here for review is the action of the district court in granting a new trial. This is made an appealable order by statute. In reviewing the action of the district court we are not, as would seem to be, as insisted by counsel for respondents confined to the question of whether there has been an abuse of discretion by the trial court in granting a new trial, but are we satisfied from the record before us that an injustice has been done; or, in other words, does "the promotion of justice" demand that a new trial should be granted? The case seems to have been fully and carefully presented to the jury upon issues fairly made. It is urged that but nine of the jury signed the verdict. If that is to be made a ground for a new trial, the statute authorizing such a verdict is a mere nullity. Trials in the district court involve great expense, not only to the litigants, but to the public, and they should not be granted unless the "promotion of justice" demands it; and we are unable to say, from the record presented, that such a demand is warranted in this case. We think this is a case in which the maxim, *"De minimis non curat lex,"* may be properly invoked. The order of the district court granting a new trial is reversed. Costs to appellant.

Sullivan, J., concurs.

QUARLES, J., Dissenting.—It is admitted that the sheep sold by appellant to respondents were afflicted with scab, which afterward broke out among them. The undisputed evidence is to the effect that respondents, in their efforts to eradicate said disease, incurred necessary expenses to the extent of.

$296.05.   They had pleaded special damages by reason of such expenditure in the sum of $300.   The jury only awarded the respondents damages, all told, growing out of the diseased condition of said sheep, in the sum of $200.   This was less than the undisputed testimony shows had been incurred in the effort to eradicate the disease from the sheep to the extent of ninety-six dollars and five cents.   But it is contended that one of the items in this expenditure was for a dipping vat that cost $55, and that this should be deducted from the $296.05, which would leave the expenses incurred $241.05, or forty-one dollars and five cents less than was expended by respondents. I do not think that the special damages incurred by the respondents should be reduced by the amount which such dipping vat cost.   The evidence shows that such vats should not be on or near a sheep ranch or feeding ground; that they should be, and are, usually, located in some isolated and remote quarter; that, owing to the severity of the weather, it being very cold, when the disease reached such stage as made dipping necessary, it was necessary to construct such vat at the ranch of respondents.   Mr. Woodmansee testified concerning the vat as follows: "The vat I referred to was constructed upon our ranch.   It is still there.   It is not necessary to have a dipping vat upon a sheep ranch.   I have used it some.   I think I will dig it up.   It might be a permanent fixture, but it is likely to affect the ranch with the scab."   I think that under this evidence it could not be held that the presence of such dipping vat on the ranch was necessary or desirable, but that it was detrimental, and a menace.   So leaving entirely out of consideration the other damages claimed by respondents, I think that the jury failed to allow the sum of ninety-six dollars and five cents, which respondents were entitled to as special damages by reason of said expenses.   But it is contended that the trial court should not have granted a new trial on this ground, but should have reduced the judgment in favor of the plaintiff to the extent of ninety-six dollars and five cents, or such sum of undisputed damages as the jury failed to give the respondents.   I do not agree with such contention.   While, in case of a verdict for excessive damages,

the trial court may make an order directing that a new trial shall be granted unless the successful party remits that certain portion of the damages awarded as are excessive, yet I know of no rule of law or practice that will permit a court to add to the amount of a verdict damages to which the successful party is entitled, but which have not been awarded to him by the jury. The undisputed evidence before us shows that the respondents were entitled to more damages than the jury awarded them. On this ground alone the trial court was authorized to grant a new trial. The rule is well established in this jurisdiction that an order made by the trial court or judge thereof granting a new trial will not be disturbed on appeal unless the record shows a clear abuse of discretion. The record before us shows that the trial court did not abuse its discretion in granting a new trial, for which reason, if for no other, the order granting a new trial should be affirmed. For the reasons above set forth, I am unable to concur in the opinion of the court in this case.

ON REHEARING.

(August 7, 1900. )

SULLIVAN, J.—After a careful consideration of the petition for a rehearing in this case, we find no ground on which to base a rehearing. A rehearing is therefore denied.

Huston, C. J., concurs.

QUARLES, J.—For the reasons stated in the opinion heretofore filed by me in this case, and wherein I dissented from the views of my associates, I think that the petition of the respondents for a rehearing should be granted.