(June 1, 1915.)

## NORA SMITH, Executrix, etc., Respondent, v. THE WALLACE NATIONAL BANK, a Corporation, and H. F. SAMUELS, Appellants; F. C. NORBECK, D. E. KEYS and THOMAS McCABE, Respondents.

[150 Pac. 21.]

PRACTICE—ASSIGNMENTS OF ERROR—TRUST FUND—BANKS AND BANKING—KNOWLEDGE OF CASHIER—NOTICE TO BANK—NEW TRIAL.

1. The purpose of the provision in the rules of practice that appellant's brief shall contain a distinct enumeration of the several errors relied on is to require appellant to inform respondent and this court what action of the trial court is relied upon for a reversal of the judgment or order appealed from, and when it is stated in appellant's brief that the appeal is from the order granting a new trial, and when no other action of the trial court is complained of, the appeal will be considered upon its merits, although appellant's brief does not contain an assignment of errors in the usual form.

2. *Held,* that the rule that "an owner is always entitled to follow a trust fund wherever it may be found" does not apply to the facts in this case as the verdict shows them to have been found by the jury.

3. While it is a general rule that a bank is bound to take notice of facts pertaining to its business within the knowledge of its

cashier, there are exceptions to the rule, and it is not bound by notice of facts relating to an independent fraudulent act which the cashier is committing on his own account, the communication of which would prevent the consummation of the fraud, nor when he is openly acting on his own behalf, or on behalf of another in a transaction with the bank.

4. *Held,* that under the facts in this case the appellants are not liable for the acts of the cashier in conducting the business entrusted to him by respondent's testatrix.

5. Where the record does not show the ground upon which a new trial was granted, and no error warranting it appears, the order granting it will be reversed upon appeal.

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. William W. Woods, Judge.

Action for damages for failure to record a mortgage and for procuring it to be released when recorded, whereby plaintiff's security was lost. Judgment for defendants. Order granting a new trial. *Reversed.*

John P. Gray and John H. Wourms, for Appellants.

The acts of Norbeck were clearly without the scope of his employment. (*City Electric Street Ry. Co. v. First Nat. Bank,* 65 Ark. 543, 47 S. W. 855; *Hummell v. Bank of Monroe,* 75 Iowa, 689, 37 N. W. 954; *Langlois v. Gragnon,* 123 La. 453, 49 So. 18, 22 L. R. A., N. S., 414; *School Dist. v. De Weese,* 100 Fed. 705; *Sherwood v. Home Savings Bank,* 131 Iowa, 528, 109 N. W. 9; *Lilly v. Hamilton Bank,* 178 Fed. 53, 102 C. C. A. 1, 29 L. R. A., N. S., 558; *Schumacher v. Greene Cananea Copper Co.,* 117 Minn. 124, Ann. Cas. 1913C, 1115, 134 N. W. 510, 38 L. R. A., N. S., 180; *Kennedy v. Otoe County Nat. Bank,* 7 Neb. 59; *State v. Commercial Bank,* 14 Miss. 218, 45 Am. Dec. 280; *Ballston Spa Bank v. Marine Bank,* 16 Wis. 120.)

The jury by their verdict upon all of the disputed questions of fact found in favor of the appellants, and under the decision of this court in the case of *Maw v. Coast Lumber Co.,* 19 Ida. 396, 114 Pac. 9, the trial court as well as this

court is bound by the findings of the jury upon these questions. No legal cause has been given why the new trial was granted and under the cases a new trial should not be granted except for some legal cause. (*Clifford v. Denver etc. Ry. Co.*, 12 Colo. 125, 20 Pac. 333; *Braithwaite v. Aiken*, 2 N. D. 57, 49 N. W. 419.) A new trial should not be granted unless it appears that an injustice has been done. (*Manning v. German Ins. Co.*, 107 Fed. 52, 46 C. C. A. 144; *Barksdale v. Smith*, 31 Ga. 671; *Woodward v. Horst*, 10 Iowa, 120; *Rowe v. Matthews*, 18 Fed. 132.)

Chas. E. Miller and Featherstone & Fox, for Respondent Smith.

When, in the course of his employment, an officer or other agent of a bank acquires knowledge or receives notice of any fact material to the business in which he is employed, the bank is deemed to have notice of such fact. (Tiffany on Banks, 333; 5 Cyc., subd. 2-c, 460.)

A more stringent rule applies to the president, cashier or other managing officer, because he devotes his chief attention to the business of the bank. All the knowledge acquired by him pertaining to its affairs is imputed to the institution. (Bolles on Banking, 398 (5).) Notice to the cashier is notice to the bank. (*First Nat. Bk. v. Ledbetter* (Tex. Civ.), 34 S. W. 1042; *City Nat. Bank v. Martin*, 70 Tex. 643, 8 Am. St. 632, 8 S. W. 507.)

A bank is liable for the fraud of its agent committed in the course of the bank's business, at least to the extent of the benefit received by it from the fraud. (*Binghamton Trust Co. v. Auten*, 68 Ark. 299, 82 Am. St. 295, 57 S. W. 1105.)

In such a case as this the bank should be held responsible instead of an innocent party upon every principle of reason and morality. (*Cooke v. State Nat. Bk.*, 52 N. Y. 96, 11 Am. Rep. 667; *Farmers' etc. Bank v. Butchers' etc. Bank*, 16 N. Y. 125, 69 Am. Dec. 678; *New York & N. H. R. v. Schuyler*, 34 N. Y. 30; *Bell v. Campbell*, 123 Mo. 1, 45 Am. St. 505, 25 S. W. 359.)

The owner is always entitled to follow a trust fund wherever he may find it. (Bolles on Banking, 495; *Bank of Virginia v. Domestic Sewing Machine Co.,* 99 Va. 411, 86 Am. St. 891, 39 S. E. 141; *Overseers v. Bank of Virginia,* 2 Gratt. (Vt.) 544, 44 Am. Dec. 399; *State v. Bruce,* 17 Ida. 1, 134 Am. St. 245, 102 Pac. 831.)

Failure to assign errors upon appeal from an order granting a new trial is fatal and amounts to a waiver of all error. (2 Cyc. 1010; *Hollister v. State,* 9 Ida. 8, 71 Pac. 541.)

All exceptions taken in the court below will be treated as waived unless they are assigned as errors in the supreme court. (*Purdy v. Steel,* 1 Ida. 216.)

Errors not set out in the specifications of error, in the statement of the case and in the bill of exceptions will not be considered on appeal. (*Gaffney v. Hoyt,* 2 Ida. (184) 199, 10 Pac. 34.) Error assigned in the transcript but not referred to in brief is waived. (*Idaho Mer. Co. v. Kalanquin,* 8 Ida. 101, 66 Pac. 933; *Byron v. First Nat. Bank* (Or.), 146 Pac. 516; *Adrich v. Chemical Nat. Bk.,* 176 U. S. 618, 20 Sup. Ct. 498, 44 L. ed. 611; *Wyman v. Wallace,* 201 U. S. 230, 26 Sup. Ct. 495, 50 L. ed. 738; *Poppleton v. Wallace,* 201 U. S. 245, 26 Sup. Ct. 498, 50 L. ed. 743; *United States Nat. Bank v. First Nat. Bank,* 79 Fed. 296, 24 C. C. A. 597; *Merchants' Bank v. State. Bank,* 10 Wall. (U. S.) 604, 19 L. ed. 1008; *Chapman v. First Nat. Bank* (Or.), 143 Pac. 630.)

MORGAN, J.—Since the appeal in this case was taken the respondent, Mary A. Smith, died. Her death has been suggested of record and by stipulation of the parties Nora Smith, her executrix, has been substituted as respondent.

This is an action commenced by Mary A. Smith against the Wallace National Bank and H. F. Samuels, president thereof, appellants, and against D. E. Keys, vice-president, F. C. Norbeck, cashier, and Thomas McCabe, assistant cashier of said bank, for damages for failure to record a certain mortgage given to secure the payment of a promissory note for $3,000 due to her and for procuring the same to be released when recorded, whereby her security was lost and said prom-

issory note became valueless. Norbeck failed to answer or otherwise appear in the case and the trial resulted in a verdict and judgment for the other defendants. An order was entered granting a new trial as to the bank and Samuels from which order this appeal is prosecuted.

Norbeck, who was a nephew of Mrs. Smith by marriage, on about June 1, 1908, visited her at her home in Tacoma, Washington, and on that occasion urged her to place in his hands to be loaned the sum of $3,000, which amount of money she had on deposit in a bank in Tacoma. Upon his return to Wallace, Idaho, he wrote a letter which, while addressed to a daughter of Mrs. Smith, was intended for her information. It is in part as follows:

"Am all ready for the $3,000 if you will send it to me at once. Can get you 1% per month and will mail you a draft for $30 each month on any date you say for the interest. This will last for three months sure, and then I think I can get you a little better than that, so you are certain of $30 per, *at least*. Send the draft payable to the Wallace Nat'l Bank, our new name, and I'll fix up the note, etc. and will guarantee everything to you as well."

Thereafter and about June 20, 1908, Mrs. Smith mailed to Norbeck a draft for the sum of $3,000 payable to the Wallace National Bank. He placed the money to his own credit in the bank and immediately thereafter loaned it to one Herman Rogell, who was a customer of the bank and who was at that time indebted to it. Rogell applied a portion of the $3,000 in payment of his indebtedness to the bank and paid Norbeck $200 for procuring the loan for him. As evidence of the indebtedness to Mrs. Smith, Rogell gave his promissory note to Norbeck in the sum of $3,000 and, to secure the payment of the same, he and his wife made, executed and delivered to Norbeck a mortgage, in which Norbeck was named as mortgagee, upon real property situated in the village of Mullan, Idaho. The mortgage was not recorded until March 10, 1910, and after its execution and before it was recorded Rogell deeded a portion of the property covered by it, by way of mortgage, to an innocent purchaser or encumbrancer

for value and thereby about one-third of Mrs. Smith's security was lost. On about September 9, 1910, Rogell was heavily indebted to the bank and, at the urgent and insistent request of its officers and directors that he reduce his indebtedness, he sold to one Sarah Flood the remainder of the property covered by the mortgage. When it was discovered by Mrs. Flood's attorney that the mortgage was of record against the property, Norbeck released it, thereby depriving Mrs. Smith of the remainder of her security. Mrs. Flood paid $2,125 for the property which was applied toward the payment of Rogell's indebtedness to the bank. Thereafter Rogell was adjudged to be a bankrupt and Norbeck was convicted of a violation of the United States banking laws and was sent to the penitentiary.

It is contended by the respondent that said bank and its officers and agents, in order to protect and prolong the credit of Rogell and without any regard for the rights of Mrs. Smith wrongfully and fraudulently neglected and refused to record the mortgage until after a portion of the property had been disposed of as aforesaid, and wrongfully and unlawfully released and discharged the lien of said mortgage in order that the remainder of it might be sold to Mrs. Flood, thereby depriving Mrs. Smith of her entire security, to her injury and damage in the sum of $3,606.

The appellants contend that in procuring the money from Mrs. Smith Norbeck did not act as an officer or agent of the bank, and that in making the loan to Rogell and in neglecting to record the mortgage and in releasing it after it had been recorded he acted, not as the agent of the bank, but as the agent of Mrs. Smith; that none of his said acts were within the scope of his authority as cashier of the bank and that none of the officers of the bank, except Norbeck, knew anything about any of the transactions above related; that all of his acts with respect to the loan were committed without any knowledge of the rights of Mrs. Smith upon the part of any of the officers or agents of the bank, except himself.

Our attention is directed to the fact that appellants' brief contains no assignment of errors. Rule 45 of the rules of

practice of this court is, in part, as follows: "The brief of the appellant and the plaintiff in error shall also contain a distinct enumeration of the several errors relied on." The purpose of this provision is to require the appellant to inform the respondent and this court what action of the trial court is relied upon for a reversal of the judgment or order appealed from. While appellants' brief does not contain an assignment of errors in the usual form, it is therein stated that the appeal is from the order granting the plaintiff a new trial, and since no other action of the trial court is complained of, neither the respondent nor this court has been misled or left in doubt as to the error relied upon by appellants and the appeal will be considered upon its merits.

The trial judge has not indicated the ground upon which his action in granting a new trial was based. A careful examination of the record fails to disclose a single error committed during the course of the trial. The court's rulings as to the admissibility of evidence are correct and the instructions given to the jury fully and clearly state the law applicable to the case. The only material conflict in the evidence is between the testimony of the witness Rogell, for the plaintiff, upon the one hand, and that of a number of witnesses for the defendants supported by documentary evidence upon the other, as to the knowledge of the directors and officers of the bank, other than Norbeck, relative to the loan of $3,000 to Rogell, the failure to record the mortgage and placing of record the release after the mortgage had been recorded. The jury, by its verdict, viewed in the light of the instructions given to it by the trial judge, found that Mrs. Smith sent the money to Norbeck, not to the bank, to be loaned; that Norbeck, not the bank, acted as her agent; that none of its officers, other than Norbeck, knew of the transaction, and that neither the bank nor its officers procured him to withhold the mortgage from record or, with knowledge of Mrs. Smith's loan, to release it after it was recorded.

Without quoting from the testimony and without indulging in comment upon the apparent credibility or lack of credibility of any of the witnesses, we may say these questions of

fact could not well have been resolved otherwise than they were by the jury in its verdict, for the great preponderance of the evidence supports the contention of appellants.

It is urged by respondent that the owner is always entitled to follow a trust fund wherever it may be found. In this case the bank received a part of the money arising from the loan to Rogell and that arising from the sale of his property, without fraud upon its part, in the regular course of business, in partial payment of his indebtedness and without notice of the loan by Mrs. Smith. The principle contended for does not apply to the facts as we view them and as the verdict shows them to have been found by the jury.

A number of points are urged by respondent in support of the order granting a new trial, among them being that the verdict was contrary to the evidence; that certain evidence offered by appellant should not have been admitted and that the court erred in refusing to give to the jury certain instructions requested by respondent. The rulings of the learned trial judge upon these points were so manifestly correct that we do not believe comment upon them to be necessary. This case, however, presents a question of law which is relied upon by respondent and which may be stated as follows: Did the bank, through Norbeck, have such notice as to render it liable in damages for failure to record the mortgage before a portion of the security was lost, and was his knowledge of the ownership of the $3,000 and of the mortgage given to secure the payment of it, notice to the bank which required it to apply the money arising from the sale of the property toward the payment of Rogell's debt to Mrs. Smith and precluded it from applying said money toward the payment of his debt to itself?

In support of their position counsel for respondent quote from Tiffany on Banks and Banking, p. 336: "The cashier being the officer of the bank by whom its financial transactions are conducted, the bank is generally bound by his knowledge." The entire article on "notice" from which the foregoing extract is quoted discloses that there are certain exceptions to the rule, one of which applies to this case. The

author has briefly and fairly restated the doctrine of said article as follows:

"*In General.*—In accordance with the general rule of agency, when, in the course of his employment, an officer or other agent of a bank acquires knowledge or receives notice of any fact material to the business in which he is employed, the bank is deemed, as a rule, to have notice of such fact; and in most jurisdictions knowledge of a fact material to the business in which the agent is employed, if actually present in his mind during the agency and while acting in the bank's behalf, although acquired by him outside of his agency, is deemed, as a rule, notice to the bank.

"*Disclosure Against Interest.*—The knowledge of the agent will not be imputed to the bank, when the agent is engaged in committing an independent fraudulent act upon his own account, and the knowledge sought to be imputed is of facts which relate to that act, and which, if communicated, would prevent the consummation of the fraud, or when the agent is openly acting on his own behalf, or on behalf of another in a transaction with the bank; but when, in any transaction, the agent does an act as the sole representative of the bank, and is not acting openly on behalf of himself or another, although his conduct may be fraudulent, it is generally held that the bank may not avail itself of the act, in order to retain an advantage or to assert a claim founded thereon, without being charged with his knowledge."

In this case Norbeck was not acting for the bank, neither was he acting in the course of his employment, and the facts disclosed by the record fully justify the conclusion that he was engaged in committing an independent fraudulent act upon his own account, and that the knowledge sought to be imputed was of facts which related to that act, and which, if communicated, would prevent the consummation of the fraud.

In case of *State v. Commercial Bank of Manchester,* 14 Miss. 218, 45 Am. Dec. 280, it is said (quoting from the syllabus): "Cashier of a bank is but the agent of the corporation,

and his acts are governed by the general rule for agents, viz., that if they exceed their authority they do not bind their principal."

The supreme court of Nebraska in case of *Kennedy v. Otoe Co. Nat. Bank,* 7 Neb. 59, said: "Like other agents, a bank president must act within the scope of his authority in order to bind his principal; unless his acts are ratified."

It is said in case of *School District v. De Weese,* 100 Fed. 709, as follows:

"It would be a far-reaching and dangerous doctrine to establish when the cashier of a bank, acting in his individual capacity, and for his own aggrandizement, receives in trust, as the agent of a third party, property or money, that because he is at the time cashier and active manager of the bank, and, as a mere matter of bookkeeping (done, doubtless, to cover up his own fraud), he first enters the proceeds on the books of the bank, to the bank's credit, and immediately passes the same to his own individual account, and forthwith checks the same out to his individual use, the bank should be affected with his guilty knowledge, and made to account for the fruit of his ill-gotten gains, when in point of fact the bank gained nothing in the end by the transaction. The bank in such case is not acting in privity with the agent of the third party. Thompson in these whole transactions was acting as the agent of the plaintiff, and not as the agent of the bank."

In case of *Hummell v. Bank of Monroe,* 75 Iowa, 689, 37 N. W. 954, the supreme court of Iowa said:

"The notice to the principal of such facts as were known to the agent, and were present in his mind at the time of the transaction, but the knowledge of which was not acquired in the business of the agency, is constructive. Ordinarily the circumstances are such as to beget a presumption that the communication was in fact made. But when they are of such character that, according to all human experience and observation, the probability is just the reverse, it would be absurd to indulge that presumption."

The supreme court of Arkansas, in case of *Grow v. Cockrill*, 63 Ark. 418, 39 S. W. 60, 36 L. R. A. 89, in passing upon the question of the liability of a bank for the acts of its cashier, said:

"Again, it must not be lost sight of that, while the principal is responsible for the tortious acts of his agent committed while in the exercise of his authority, as such, yet the principal is subject to another principle, and that is the acts of the agent must be such as the principal has a right to require of him, or he will not be liable by operation of law, unless he has made himself actually liable otherwise. The services the cashier undertook to render for the appellant seem to have been a mere gratuity, done as an accommodation to her, if not deceptively. There is no showing that the bank, by its charter, had authority to transact such business as that of loaning the money of its depositors or of other people in general. Such authority we have failed to find in the national banking law, and the decisions on the subject, or rather the decisions involving analogous facts, all seem to be to the effect that the business of a broker (and a broker's business is to loan the money of others, or borrow for others, or buy and sell property of others, and such like) is not a business in which a national bank can lawfully engage, since it is not mentioned in the national bank act, and the act is strictly construed as against the grantee corporation as to powers conferred, as in all cases of private corporate grants of powers."

Counsel for respondent have cited a number of authorities in support of the contention that the knowledge of Norbeck was notice to the bank. An examination of these authorities will, we think, readily distinguish them from the case at bar. We will briefly comment upon a few of them.

In case of *Byron v. First Nat. Bank* (Or.), 146 Pac. 516, the question was whether Mrs. Byron, who was a depositor in the bank, authorized Sheridan, its president, individually to check out the money and lend it or ·use it for himself, or whether she contracted to lend it to the bank. The court said: "It may be conceded, and it is the law, that a national

bank cannot act as a broker; so, if the contract is to be construed in that aspect, plaintiff's case must fail. It is either a loan to the bank or a private transaction with Sheridan." The court examined the evidence and found sufficient to justify the jury in finding the loan was to the bank.

In case of *Chapman v. First Nat. Bank* (Or.), 143 Pac. 630, Chapman was a depositor in the bank. He gave Sheridan, president of the bank, authority to loan his money and Sheridan loaned it to himself. The court said:

"In this case all admit that the money was on deposit with the defendant bank at the time plaintiff requested that a 'loan' be effected, thereby creating the relation between the parties litigant of debtor and creditor. The money being on deposit at the time of its appropriation by the president, the board of directors, as the 'mind' of the corporation, having a general superintendency over and the management of the business affairs and transactions of the bank, was bound to know of the relation existing between plaintiff and defendant and the incidental duties flowing therefrom. So defendant, in honoring the memorandum check bearing the name of plaintiff as signed by Sheridan, president of the bank, made the act of the president the act of itself. If Sheridan had converted the money without the bank having received it or without credit being given to plaintiff on its books, the bank would not then be liable."

In the case of *City Nat. Bank v. Martin,* 70 Tex. 643, 8 Am. St. 632, 8 S. W. 507, Martin was a depositor in the bank and requested the teller to loan money for him which he had on deposit. The loan was made and the note procured as evidence thereof was left with the bank for collection. When the note was paid the teller embezzled the money and deposited it in the bank to his own credit. The court held that at the time the teller received payment of the note he was acting in the apparent scope of his authority and knew the money belonged to appellee; that his knowledge, under the circumstances, must be imputed to the bank.

In the case of *Smith v. Anderson,* 57 Hun, 72, 10 N. Y. Supp. 278, it is decided that where the president of a bank

receives money which is deposited in the bank, his knowledge will be as that of the bank and it is liable to the depositor, even though the president misappropriates the money. But that if the president had converted it without the bank having received it or without credit being given on its books, it would not be liable.

We conclude that under the facts in this case neither the Wallace National Bank nor Samuels, its president, are liable for the acts of Norbeck in conducting the business entrusted to him by Mrs. Smith.

This court is not unmindful of the oft-repeated rule that "the trial court possesses a discretion to be exercised wisely in the granting or refusal of new trials, and that such discretion will not be by the appellate court disturbed unless it manifestly and clearly appears to have been exercised unwisely and to have been manifestly abused." However, in case of *Lowe v. Long*, 5 Ida. 122, 47 Pac. 93, this additional rule is announced (quoting from the syllabus) : "Where the record does not show the ground upon which a new trial was granted, and no error warranting a new trial is apparent from the record, the order granting a new trial will be reversed." (See, also, *Wood Livestock Co. v. Woodmansee*, 7 Ida. 250, 61 Pac. 1029; *Clifford v. Denver S. P. & P. R. Co.*, 12 Colo. 125, 20 Pac. 333.)

The order of the judge of the district court granting a new trial is reversed, and the judgment is reinstated and held to be in full force and effect. Costs are awarded to appellants.

Sullivan, C. J., and Budge, J., concur.