(May 5, 1925.)

E. WILLIAMS, Respondent, v. CHARLES SKELTON et ux., Appellants.

[237 Pac. 412.]

APPEAL—ASSIGNMENTS OF ERROR—EXECUTORY CONTRACT FOR SALE OF LAND — RESCISSION—PURCHASE MONEY—REPAYMENT—EVIDENCE— INSUFFICIENCY.

1. On an appeal from an order overruling a motion for a new trial, the overruling of the motion is the ground for the appeal,

and unless respondent has been misled by the failure to specify the claimed error in overruling the motion, in the interest of justice, the appeal should be considered on the merits.

2. No recovery of the purchase money paid on an executory contract for the sale of land can be recovered by the vendee on·the rescission of the contract unless the rescission agreement, expressly or impliedly, provides therefor.

3. On an appeal from an order overruling a motion for a new trial the judgment will be reversed where the evidence is insufficient to sustain the verdict.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action for money had and received. Judgment for plaintiff. Order denying motion for new trial. *Reversed.*

Buckner & Warren, for Appellant.

If an action is brought to recover the purchase money on the ground of a rescission of an executory contract for the sale of real estate by mutual agreement and the complaint fails to allege the terms of the contract whereby the parties intended that the purchase money should be refunded, the complaint does not state a cause of action. (*Holverson v. Evans,* 38 Ida. 428, 224 Pac. 1067; *Barquin v. Hall Oil Co.,* 28 Wyo. 164, 201 Pac. 352, 202 Pac. 1107; *Clark v. American Develop. & Min. Co.,* 28 Mont. 468, 72 Pac. 978; *Eames Vacuum Brakes v. Prosser,* 157 N. Y. 289, 51 N. E. 986; 2d Dec. Dig., Contract, Key No. 253; *Winton v. Spring,* 18 Cal. 451; *Law Credits Co. v. Tibbitts,* 160 Cal. 626, 117 Pac. 772; *Lowry v. Robinson,* 3 Neb. Unof. 145, 91 N. W. 174; *Tice v. Zinsser,* 76 N. Y. 549; 3 Williston on Contracts, sec. 1827; 4 Page on Contracts, secs. 2457, 2458; 2 Black on Rescission and Cancellation, secs. 535, 616.)

A vendee in default cannot rescind and recover the payments made prior to his breach. (*Hall v. Yaryan,* 25 Ida. 470, 138 Pac. 339; *Glock v. Howard & Wilson Colony,* 123 Cal. 1, 69 Am. St. 17, 55 Pac. 713, 43 L. R. A. 199; *Hurley v. Aniker,* 51 Okl. 97, 151 Pac. 593; note in L. R. A. 1918B, 540; *Francis v. Shrader,* 38 Cal. App. 592, 177 Pac. 168;

*Russell v. Hawxhurst,* 44 Cal. App. 703, 187 Pac. 146; *Bentley v. Keegan,* 109 Kan. 762, 202 Pac. 70; *Murphy v. Dalton,* 139 Mich. 79, 102 N. W. 277.)

Where the parties agree upon the mode of adjusting and settling their differences in a cancelation of a contract, the method and stipulations so determined by them must be followed and neither can recover against the other except in accordance with the terms of their agreement. Moreover, if it appears from the facts and circumstances attending the cancelation of a contract that it was not the intention of the parties that the act of cancelation should have a retroactive effect and destroy previously vested rights, the agreement for cancelation will be so construed as to preserve those rights. (Black on Rescission and Cancelation, sec. 535; *Lowry v. Robinson,* 3 Neb. Unof. 145, 91 N. W. 174; *Law Credits Co. v. Tibbitts Co.,* 160 Cal. 626, 117 Pac. 172; *Tice v. Zinsser,* 76 N. Y. 549; *Alabama Oil etc. Co. v. Sun Company,* 99 Tex. 606, 92 S. W. 253; *Winton v. Spring,* 18 Cal. 451; *Clark v. American Developing & Min. Co.,* 28 Mont. 468, 72 Pac. 978.)

T. A. Walters and John C. Rice, for Respondent.

General specifications of error to the effect that the evidence is insufficient, without pointing out the particulars in which the evidence is claimed to be insufficient, does not present anything to the court for consideration. (*Hill v. Porter,* 38 Ida. 574, 223 Pac. 538; *Citizens Right of Way v. Ayers,* 32 Ida. 206, 179 Pac. 954; *State v. Maguire,* 31 Ida. 24, 169 Pac. 175.)

The verdict of a jury will not be reversed because of insufficiency of evidence whenever there is evidence, which, if uncontradicted, would support the verdict. (*McKean v. Twin Falls Canal Co.,* 37 Ida. 241, 215 Pac. 851; *Fritcher v. Kelley,* 34 Ida. 471, 201 Pac. 1037; *Neil v. Hyde,* 32 Ida. 576, 186 Pac. 710; *Raft River Livestock Co. v. Laird,* 30 Ida. 804, 168 Pac. 1014.)

Upon the rescission of a contract between parties thereto, the legal effect is to obliterate the same, and the result is

that the parties stand in the same relation to each other as if no contract had ever existed. Where such condition exists and payments have been made upon the contract, the party having received such payments has money in his possession which belongs to the other party. An action to recover the same is an action for money had and received. (*Lemle v. Barry*, 181 Cal. 1, 183 Pac. 150; 39 Cyc. 1358; 13 C. J. 602, sec. 627; *Glock v. Howard & W. Colony Co.*, 123 Cal. 1, 69 Am. St. 17, 55 Pac. 713, 43 L. R. A. 199; *Cornely v. Campbell*, 95 Or. 345, 186 Pac. 563, 187 Pac. 1103; *Woodard v. Willamette Valley Irr. Co.*, 89 Or. 10, 173 Pac. 262; *Weitzel v. Leyson*, 23 S. D. 367, 121 N. W. 868; *Foxley v. Rich*, 35 Utah, 162, 99 Pac. 666; *Hurley v. Anicker*, 51 Okl. 97, 151 Pac. 593; *Peloian v. Waldman*, 54 Cal. App. 116, 201 Pac. 344; *Dietz v. Rabe*, 65 Mont. 500, 211 Pac. 343; *Hollingsworth v. Ruckman* (Mont.), 232 Pac. 180.)

The trial court on motion for new trial is not bound by the rule that where there is a substantial conflict in the evidence, the verdict will not be set aside.

A motion for a new trial on the ground of the insufficiency of the evidence is addressed to the sound legal discretion of the court. (*Wolfe v. Ridley*, 17 Ida. 173, 20 Ann. Cas. 39, 104 Pac. 1014; *Hall v. Jensen*, 14 Ida. 165, 93 Pac. 962; *Hazard v. Cole*, 1 Ida. 276; *Cox v. Cox*, 22 Ida. 692, 127 Pac. 679; *Baillie v. City of Wallace*, 22 Ida. 702, 127 Pac. 908.)

WM. E. LEE, J.—On April 27, 1920, appellants Charles W. Skelton and Anna L. Skelton, husband and wife, and respondent E. Williams, made and entered into an agreement in writing wherein and whereby appellants, as vendors, agreed to sell and respondent, as vendee, agreed to buy an eighty-acre tract of land in Canyon county, for the sum of $25,000. One thousand dollars was paid by respondent to appellants at the time of the execution of the agreement, $4,000 on or about May 7, 1920, and the remainder of the purchase price was to be paid at stated future times.

The vendee went into possession of the premises at about the time of the execution of the agreement and continued to occupy the same until a short time after March 17, 1921. A $2,000 payment, together with interest on the amounts remaining unpaid, became due and payable on January 1, 1921. Neither payment was made. The contract of sale contained the usual forfeiture clause and time was especially made the essence of the agreement. On January 10, 1921, a writing was executed by the vendor, Charles W. Skelton, extending the time for making the payment which became due on January 1, 1921, to April 1, 1921. On March 17, 1921, vendor Charles W. Skelton and vendee went together to the First National Bank of Caldwell, where they signed the following, which was prepared by an officer of the bank:

"Caldwell, Idaho, March 17, 1921.

"First National Bank,

"Caldwell, Idaho.

"Gentlemen:

"I hereby demand the return of the papers inclosed in that certain escrow between the undersigned and E. Williams for the sale of certain real estate. Under the terms of the contract a payment of $2,000 on the principal and interest on $20,000 was due January 1, 1921, and neither the payment on the principal or interest has been paid. I hereby declare the contract canceled and all papers returned to me according to the terms of said contract.

"Yours truly,

"C. W. SKELTON."

"4361. You are hereby instructed to return all papers in enclosed escrow to C. W. Skelton.

"Dated March 17, 1921.

"E. WILLIAMS."

On the execution of the foregoing the "escrow papers" were delivered to Mr. Skelton and a few days thereafter vendee removed from the premises and surrendered possession thereof to the vendors. A little more than a year thereafter the vendee commenced this action against the

vendors to recover back the purchase money paid on the contract for the sale of the land, less $500 which he alleged was a reasonable rental value of the land during the time he had occupied it, alleging as a basis therefor that the parties by mutual agreement had rescinded and canceled the contract for the sale of the land. The vendors specifically denied the allegations of the complaint, and affirmatively alleged that the vendee had failed to make the payments due under the contract; that vendee notified vendors that he would be unable to make any further payment on the contract, and was willing to forfeit all payments that had theretofore been made and surrender the premises and cancel the contract; and that vendors accepted the offer of the vendee, and, as a result thereof, the parties went together to the bank and signed the papers hereinbefore set forth. The cause was tried to the court and a jury. A verdict was rendered in favor of the vendee, and judgment was entered in favor of the vendee and against the vendors in accordance with the verdict. A motion for a new trial was made and denied, and this appeal is from the order denying the motion for a new trial.

One of the grounds of the motion for a new trial was that the evidence was insufficient to sustain the verdict, and it is one of the specifications of error set out and argued in the brief. After the filing of appellants' brief, an additional memorandum was filed which more specifically set forth the particulars in which the evidence was claimed to be insufficient, which memorandum respondent moved to strike. In *State v. Johnson,* 39 Ida. 440, 227 Pac. 1052, a memorandum, specifying the particulars in which the evidence was claimed to be insufficient, was filed and considered in determining the cause. The additional memorandum herein also specified that ''The court erred in overruling appellants' motion for new trial.'' It is not necessary to here determine whether an appellant, subsequent to the filing of his brief, may be permitted to set forth additional assignments of error. In *Smith v. Wallace Nat.*

*Bank,* 27 Ida. 441, 150 Pac. 21, this court reversed a judgment on appeal from an order granting a new trial even though there was no assignment that the court erred in granting the motion. In the recent decision of this court in *Walton v. Clark, ante,* p. 86, 231 Pac. 713, specifications of error were considered on an appeal from an order overruling a motion for new trial, even though there was no assignment that the court erred in overruling the motion. On an appeal from an order overruling a motion for a new trial, the overruling of the motion is the ground for the appeal, and unless respondent has been misled by the failure to specify the claimed error in overruling the motion, in the interest of justice, the appeal should be considered on the merits.

The question presented for our consideration was recently before this court (*Holverson v. Evans,* 38 Ida. 428, 224 Pac. 1067), and was given careful consideration. In determining the rights that flow from the rescission of an executory contract for the sale of land, the majority opinion contains the following statement.

"Generally, we think, a majority of the cases hold that in the event of a naked rescission by mutual agreement of a contract for the sale of real property the law implies an agreement that the vendor will repay the purchase money received less the reasonable value of the use of the property, if the vendee has been in possession, unless it affirmatively appears from the rescission contract that such repayment was not to be made.

"This does not seem to us a reasonable or just rule."

The first paragraph of the syllabus, in that case, prepared by the writer of the majority opinion, is as follows:

"If an executory contract for the sale of real property is rescinded by mutual agreement of the parties no recovery of the purchase money can be had unless the rescission contract either expressly or impliedly provides therefor."

Whatever differences of opinion may exist as to the soundness of the position announced in the majority opinion in

*Holverson v. Evans,* it is now the rule in this state, and, in accordance therewith, this cause must be decided.

To determine whether the so-called rescission agreement expressly or impliedly provides for a return of the purchase money paid on the contract for the sale of the land, we must examine the evidence. The agreement was oral. And since there was a conflict in the evidence we will rely on the evidence adduced by the vendee, as that was what the jury evidently believed. The vendee testified:

"A. Mr. Skelton, he said to me, 'It is the time of the year I ought to go to farming; I got to buy my horses and machinery and I would like for you to go around and sign the contract over so Mr. Hendon would turn it over to him.' . . . .

"A. I said, 'Mr. Skelton, don't you think you should pay me back what I paid on it?' He did not say anything, he laughed about it. I asked him then if he wanted to buy the derrick I got with the place and he said I got the derrick on the place. I told him if I got the derrick on the place Mr. Heath the real estate man bought the derrick and give it to me on the contract. I and Mr. Skelton parted and walked away. . . . .

"A. That is the way he stated it, he said he wanted me to go around to the Bank and sign these papers. He said he wanted me to go around to the Bank and sign these papers so Mr. Hendon could deliver them to him. . . . .

"A. He told me that Mr. Hendon wanted to see me around at the Bank and asked me if I would not go around to the Bank with him. He said he would like to get these papers signed over so he could go to farming. I and Mr. Skelton went around to the Bank and I signed the papers over to him. I asked Mr. Hendon, where is these papers? He got them and wrote on it a release for him between I and Mr. Skelton, leaving him out from the obligation and I signed it and walked out and left Mr. Skelton and Hendon talking; they was talking when I got to the door and I went outside and they was still talking. . . . .

"A. I got a place just as soon as possible and moved away the 7th day of April. . . .

"A. Mr. Skelton took possession of the land a day or two after I signed the contract.. . . . .

"A. I could not state what date it was on but I went down there—I had a chance to get money to pay him on this place and I owed him $20,000, that is what the contract was supposed to be, and I had a chance to get, to borrow $18,000 and I went down there and asked Mr. Skelton if he would take $18,000 and give a deed and he would not. . . . .

"A. I and Mr. Lake went to him and I offered him $19,000—that was the man I was going to get the money through, and Mr. Skelton said he would study it over, and he did not take it. . . . .

"Q. What was the occasion then of Mr. Skelton coming to you on the 14th or 15th of March and telling you that he was, that he would like to go to farming?

"A. The occasion of his coming to me then was because he did not accept this and I did not have the ready money after that.

"Q. Wasn't the reason because you told him you did not have the money to go ahead with this contract?

"A. I did not tell him I would not, I told him if I had the money I would go ahead at the time we was there.

"Q. And did you not tell him you did not have the money to go ahead with this contract?

"A. No, sir, I did not, for I had some of my own and I had told him I had some money coming in but he would not wait the time. He said it is time to do something on the farm. . . . .

"Q. Then you never came to any agreement about that $5,000, did you, Mr. Williams?

"A. No, sir.

"Q. Did you ever discuss giving him any money for rent for the time you had occupied the premises?

"A. No, sir. . . . .

"Q. What was said, if anything, by Mr. Skelton to Mr. Hendon that caused you to turn, to release this contract? . . . .

"A. Why, Mr. Skelton he was all the time wanting his contract and a fellow will get tired of being nagged after a while, I should judge, and I just considered that I would just go and release the contract with him. . . . . "

Taking all the evidence of the vendee into consideration, we do not see how, by placing on it the most favorable construction, it can be said that there is in it any suggestion that it was expressly or impliedly agreed or understood that upon a surrender by the bank of the "escrow papers" and the surrender of the possession of the land, the vendors would pay back to vendee the $5,000 he had paid on the purchase price of the land, or any other sum. The only time, according to vendee, that he mentioned a repayment of the $5,000, vendor Charles W. Skelton just laughed at him, and vendee testified that they "never came to any agreement about that $5,000." The natural inference to be drawn from the testimony quoted is that vendee found that he was unable to complete the purchase of the land; that he was unable to secure a reduction of the balance due, and decided to and did give up his contract and surrendered the possession of the land. We are unable to discover any substantial difference between the rescission agreement in this case and that in the Holverson case, and there is no reason why it should be decided differently. We hold, therefore, that the evidence, tested by the rule announced in *Holverson v. Evans,* is insufficient to sustain the verdict and that the court should have granted the motion for a new trial. It is only fair to the court and the attorneys who tried this case to say that it was tried before the opinion in the Holverson case was announced.

The order appealed from is reversed and a new trial granted. Costs to appellants.

William A. Lee, C. J., Budge, Givens and Taylor, JJ., concur.

Petition for rehearing denied.