[Civ. No. 1027. Third Appellate District.—December 12, 1912.]

## R. D. LIST, Appellant, v. A. A. MOORE, Jr., et al., Respondents.

VENDOR AND PURCHASER—CONTRACT TO PURCHASE LAND—TIME OF ESSENCE—FORFEITURE OF RIGHT—ABSENCE OF RESCISSION—CONTRACT "AT END"—PURCHASE MONEY NOT RECOVERABLE.—Where a contract to purchase land made time of the essence of the contract, and provided that in the event of the failure of the purchaser to comply with the terms of the contract before the time fixed for the deed, without any deed made, the purchaser shall be deemed in default, and shall forfeit all rights under the contract, notice given to the purchaser, after such default, that the contract is "at an end," does not constitute a rescission of the contract, or give to the purchaser any right to recover any part of the purchase money paid. The contract is "at an end" either with or without any formal notice, for inability of the purchaser to make payments.

ID.—RIGHT OF VENDOR TO RETAIN PURCHASE MONEY AFTER DEFAULT INDEPENDENT OF EXPRESS CONTRACT.—The right of the vendor to retain the part of the purchase price paid after the default of the purchaser is independent of any express clause in the contract for forfeiture of rights, or for retention of the purchase money as liquidated damages. Such clauses are merely declaratory in express terms of the legal rights under such a contract without them, and the validity of such express clauses is immaterial.

ID.—RESCISSION WHEN EFFECTED.—It is only where the vendor, after the default of the purchaser, agrees to a mutual abandonment and rescission of the contract, that the purchaser is entitled to recover the purchase money paid.

ID.—RESCISSION WHEN NOT EFFECTED.—Upon default of the purchaser without excuse to perform the conditions of the contract, the mere service of a notice on him by the vendor, calling his attention to

the particulars in which the default consisted and declaring the con-
tract forfeited, and all the interest of the vendee to be terminated,
and demanding possession of the property, and the subsequent taking
possession by the vendor and his bringing an action to quiet the
title thereto, did not constitute a rescission of the contract by
mutual consent, so as to give the purchaser a right of action against
the vendor to recover the purchase money paid under the contract.

APPEAL from an order of the Superior Court of the
City and County of San Francisco denying a new trial. J.
M. Seawell, Judge.

The facts are stated in the opinion of the court.

Chas. W. Slack, and D. P. Hatch, for Appellant. ,

Goodfellow & Eells, for Respondents.

BURNETT, J.—The action is to recover from the vendor
moneys paid by the vendee under contracts of sale of real
estate, in which the vendee only was in default, not being
willing or able to make the other payments within the time
limited or at all. There were two contracts. The first is
dated June 30, 1902, executed by the defendant, Florence
B. Moore, and others, and conditioned for the sale of the
property to one J. W. McCauley. This contract provided
for a purchase price of one hundred and twenty-five thousand
dollars, of which five thousand dollars should be paid when
the instrument was executed; fifty-five thousand on or before
October 28, 1902; the remaining sixty-five thousand on or
before the first day of March, 1903; all deferred payments
to bear interest at the rate of five per cent per annum. It
was further provided that "Time is of the essence of this
contract, and in the event of a failure to comply with the
terms hereof by the party of the second part, the party of
the first part shall be released from all obligation in law or
equity to convey said property, and the party of the second
part shall forfeit all right thereto." The initial payment of
five thousand dollars was made, but not the second payment
of fifty-five thousand dollars. As to the latter, however, an
extension of time was granted to March 30, 1903, with a pro-
viso that the original document held by McCauley should be

deposited with H. W. O'Melveny, of Los Angeles, "with instructions to him to return said contract to Florence B. Moore, on March 30, 1903, if the terms of said contract were not lawfully carried out by McCauley on or before that time, and in that event, the said H. W. O'Melveny shall thereupon surrender said contract as above specified to said Florence B. Moore. Thereupon, the same shall be of no further effect or force, but shall be considered canceled and terminated, and the moneys heretofore paid, and the moneys hereinabove specified, shall be considered as liquidated damages accruing to said Florence B. Moore et al. Upon the surrender of said contract of said Florence B. Moore et al., as above stated, the same is to be null and void, and of no further effect, and the said McCauley is to have no claim, directly or indirectly, to any part of the moneys heretofore paid, or hereinabove specified." On the thirtieth day of March, 1903, McCauley was again in default and unable or unwilling to make any payments and thereupon the original document was surrendered to Mrs. Moore. On the seventh day of April, 1903, McCauley's contract having expired, Mrs. Moore, through her attorneys, entered into a new contract with Nathan Cole by which she agreed to sell to him the property for the sum of one hundred and fifteen thousand dollars, payable on or before October 1, 1903, and she acknowledged the receipt of two drafts aggregating five thousand dollars. Time was of the essence of this contract also and it was provided that "The expiration of the time herein limited, with the fact that no deed is of record from the said Florence B. Moore to the said Nathan Cole, Jr., shall conclusively establish default, and no suit, at law or in equity, shall be necessary to be maintained to avoid or extinguish this contract, or declare any forfeiture." Some extensions were made and according to the last one the time would expire on December 1, 1903, but on account of Mr. Cole's illness the parties treated his right to purchase as continuing until January 1, 1904. Plaintiff brought the action as assignee of McCauley and Cole.

The court found that the contract with McCauley became canceled and terminated for the reason that he "was at all times unable or unwilling to carry out or perform the same on his part, although the defendants were at all times ready and willing to perform the same on their part; that the said

J. W. McCauley did not pay or offer to pay, prior to the 30th day of March, 1903, or at all, the moneys, or any portion thereof, required to be paid by him by the terms of the said contract and by reason thereof the same became of no force or effect on and after the 31st day of March, 1903.'' There are similar findings as to the contract with Cole. Indeed, it is not contested that there was default on the part of Mc-Cauley and Cole as found by the court, but the defense is that the contract in each instance was rescinded and abandoned and, therefore, the claim is made that the vendee was entitled to a return of the part of the purchase price paid. The court found that there was no rescission and no abandonment and this finding presents the controverted question.

The asserted rescission was attempted to be shown by Mr. Cole. In the transcript we have the following record of his testimony and the proceedings in connection therewith: ''My recollection is that about the first of January, 1904, my contract with Mr. Moore was annulled or rescinded by Mr. Moore in a letter to me. It was rescinded. Mr. Goodfellow: ''Q. You don't mean to say that he said it was rescinded, do you? A. Well, I don't know what the language was, but that was the purpose of the letter. Mr. Slack: The letter which was introduced in evidence, Mr. Goodfellow, was this: It was received about the 4th of January, 1904, and informed Mr. Cole that his contract was rescinded, and had been— Mr. Goodfellow: Do you mean to say that the word 'rescinded' was used? Mr. Slack: No; but that the contract was at an end— I think that was it—and had been for some weeks or some time. The Witness: I remember that the purport of the letter was that, that the contract was ended. That is the idea that I had, that it was terminated. Mr. Slack: We will accept Mr. Moore's recollection of that as a fact, that a letter written to Mr. Cole about this time, January 3d, 1904, stated that his contract was at an end, and had been for some time. Mr. Moore: For the reason that he had been unable to make the remaining payments. Mr. Slack: And we will ask also that that be considered as being a statement of the letter. The Witness: That is correct.'' In explanation of the reference to the contents of the letter, it may be stated that this case was partly tried before April 18, 1906, and the letter and the record of what it contained were destroyed in the great

catastrophe of that date. The witness further testified that he "was not able to raise the money by the end of December, 1903, or the 1st of January, 1904. Mr. Moore, so far as I know, and Mrs. Moore, were perfectly willing at all times to sell me that property if I could pay the money according to the contract up to the termination of the arrangements which were terminated by letter." Then the following questions and answers appear in the transcript: "Q. Then your contract ran out because you were unable to pay the money within the time specified in the contract? A. That is right. Q. And afterwards Mr. Moore wrote to you and told you that the contract had run out, and had been run out for some time? A. Yes, sir. Q. And that is the end of the transaction? A. Yes, sir, that is the end of the transaction."

From the foregoing it is clear that the asserted rescission consisted in the notification of the vendee by the vendor that his contract was at an end, and, this, after the vendee was in default according to the terms of his contract and had forfeited any right or claim to proceed to the purchase of the property and had expressly agreed that "The expiration of the time herein limited, with the fact that no deed is of record from the said Florence B. Moore to the said Nathan Cole, Jr., shall conclusively establish default and no suit, at law or in equity, shall be necessary to be maintained to avoid or extinguish this contract, or declare any forfeiture." It would be rather singular that if under the circumstances the mere notice given to the contemplated purchaser by the owner of the land of a fact that was expressly provided in the agreement and of which each had knowledge would operate to change the legal effect of said fact to the detriment of the said owner. The contract was at an end either with or without any formal notice. The purpose of the letter was undoubtedly to inform Mr. Cole that no further extension of time would be granted, but, to say that it established rescission grows out of a misconception, it is submitted, of the significance of that term and can find support only in the inept application of certain decisions of the courts. Rescission implies, of course, the restoration of the parties to the same situation and the same terms as existed when the contract was made. It requires the surrender of any consideration or advantage secured by either party. But the only fair inter-

pretation of the notice here, considered in connection with
the terms of the contract, is that no further affirmative action
should be taken by either party to execute said contract, and
that the *status* of each should remain as provided without fur-
ther change.    It is true that rescission as well as an abandon-
ment of a contract may be shown by circumstantial or direct
evidence or both, but the facts, fairly considered, do not
compel the conclusion, in opposition to the finding of the court,
that the owner of the land was so gratuitously generous as
to voluntarily surrender the valuable right secured to her
by the terms of the contract.    And it may be said that there
is nothing illegal or unconscionable disclosed in her conduct.
Adopting the language of respondents: "As the contract had
a limit and as time was of the essence of the contract, she
was not obliged to keep her property off the market forever,
or in the alternative to pay them back what they had paid
for an extension of time to enable them to speculate with the
property and avail themselves of it if the market went up,
otherwise turn it back to Mrs. Moore."

It must be admitted that some obscurity is found in certain
decisions as to the correlative rights of the parties to contracts
analogous to the one before us and appellant's position is not
without apparent support in some of the cases.    Two of these,
upon which he relies, we proceed to notice.

In *Drew* v. *Pedlar*, 87 Cal. 443, [22 Am. St. Rep. 257, 25
Pac. 749], it is held that "where a contract for the sale of
land provided for a forfeiture of all right to a conveyance,
and that the purchase money paid should be as liquidated
damages, in case of non-fulfillment of the terms of future
payments by the purchaser, and it appears that full payment
of the residue of the purchase money was tendered and a
deed demanded ten months after maturity, and that the vend-
ors refused to accept the tender, or to return the purchase
money paid, and elected to rescind the agreement, the pur-
chaser may maintain an action to recover from the vendors
the installment of purchase money paid."    Of course, if the
vendors elected "to rescind the agreement" they should re-
store the money.    The decision was really grounded, though,
upon the proposition that the stipulation as to liquidated
damages was void under the provisions of sections 1670 and
1671 of the Civil Code and it followed the general rule stated

in Field on Damages, section 508, holding that the vendor is entitled to recover "the difference between the actual contract price and the actual value of the land at the time of the breach, if the property shall have declined. in value." But this case, with others, is reviewed in *Glock* v. *Howard and Wilson,* 123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713], and it is declared that "The misleading feature in *Drew* v. *Pedlar,* 87 Cal. 443, [22 Am. St. Rep. 257, 25 Pac. 749], comes from the lengthy statement of facts, from which it appears that all the plaintiff vendee did was to make tender long after his default, which tender the vendor refused to accept. But the vendee likewise pleaded a mutual abandonment and rescission, and it appears from the opinion, the pleading as to these matters was not denied." It is furthermore said, in reference to the Drew decision, that "what is there said as to the covenant for liquidated damages being void, is, as we have seen, of no consequence in contracts such as that and the one at bar, where the liquidated damages are expressed as the moneys paid by the vendee, for in all such cases, as has been shown, the vendor is entitled to retain these moneys, whether designated liquidated damages or not."

The case of *Pierce* v. *Staub,* 78 Conn. 459, [112 Am. St. Rep. 163, 3 L. R. A. (N. S.) 785, 62 Atl. 760], rather favors the view, taken by appellant, that a rescission was effected by said notice, but it is to be observed that the court in that case attached much importance to the fact that there was no express or implied contract that the money paid by the vendee should be forfeited. The case was one also involving peculiar features and the decision brought to the vendor a just retribution for his inordinate greed in claiming as a forfeit the large sum of sixty thousand dollars without any showing made that he had lost a dollar by reason of his promise or of the default by the vendee.

But there could seem to be no controversy as to what are the controlling principles of law here in view of the decision in the Glock case. Therein it is clearly held that "Under a contract for the sale of real estate in which time is made of the essence of the contract and performance by the purchaser is made a condition precedent to a conveyance, and upon his breach of the contract he is declared to forfeit all rights thereunder, and all moneys paid thereon, the purchaser

cannot, after his default without excuse shown therefor, by a tender of the amount due, acquire either an equitable or a legal right to maintain an action to recover back the moneys paid under the contract.'' Furthermore, that ''Where time is expressly made of the essence of the contract for the purchase of land, equity will not ignore such provision but follows the law and will neither make a contract for the parties, nor violate that which they have entered into; nor will it relieve a purchaser who has made unexcused default under such a provision, and has not fulfilled conditions precedent to the vesting of his right of action.'' It is declared also that the right of the vendor to retain the part of the purchase price paid after the default of the vendee is independent of any express clause in the contract for forfeiture of rights or for retention of the purchase money as liquidated damages, that such clauses are merely declarations in express terms of the legal rights of the parties under such a contract, without them, and that the validity of such express clauses is immaterial. It is furthermore held that in such case it is only where the vendor, after default of the vendee, agrees to a mutual abandonment and rescission that the vendee is entitled to receive the purchase money paid.

This case is followed and approved in *Oursler* v. *Thacher*, 152 Cal. 739, [93 Pac. 1007], and *Poheim* v. *Meyers,* 9 Cal. App. 31, [89 Pac. 65.] Furthermore, it is held in the Oursler case that ''Upon the default of the vendee, without excuse, to perform the conditions of the bond, the mere service of a notice on him by the vendor, calling his attention to the particulars in which the default consisted and declaring the bond to be forfeited and all the interest of the vendee in the property to be terminated and demanding possession of the property, and the subsequent peaceable taking possession of the property by the vendor and his bringing an action to quiet the title thereto, did not constitute a rescission of the contract by the mutual consent of the parties so as to give the vendee a right of action against the vendor for the recovery of the portion of the purchase price paid under the contract or for disbursements made in the performance of other conditions thereof.''

The foregoing, we think, is sufficient to demonstrate the legal soundness of the trial court's conclusion.

As to the McCauley contract, with more reason it may be said that the court was justified in holding that the vendor was entitled to retain what had been paid. In reference to that it will be remembered the parties expressly agreed for the surrender of the contract by Mr. O'Melveny and that in such event Mr. McCauley should have no right to repayment of the money.

The order denying the motion for a new trial is affirmed.

Chipman, P. J., and Hart, J., concurred.