(January 26, 1914.)

# WILLIAM J. HALL, Appellant, v. JAMES F. YARYAN et al., Respondents.

[138 Pac. 339.]

ESCROW AGREEMENT—BREACH OF CONTRACT—FORFEITURE OF INSTAL-
MENT—RIGHT TO RECOVER INSTALMENT—TERMINATION OF ESCROW
INTEREST.

    1. Where a deed is executed and placed with a depositary ac-
companied with an escrow agreement directing the holder of the
deed as to what shall be done with the deed and the conditions upon
which it shall be delivered to either party upon the making of pay-
ments as provided for in the escrow agreement, the holder thereof
should deliver the deed to the grantee in accordance with the terms
of the escrow which constitutes a delivery of the deed and vests
title in the grantee. On the other hand, upon breach of the con-
tract and failure by the grantee to make the payments as required
by the escrow agreement, the holder thereof may return the deed
to the grantor in accordance with the terms of the escrow and
thereby terminate the interest of the grantee under the contract.

    2. Where a grantee under an escrow agreement has failed to
make payments as provided by the terms of the escrow and the par-
ties, grantor and grantee, subsequently made a contract extending
the time for making a payment and fail to communicate knowledge
thereof to the escrow holder, and the latter has no knowledge of
such agreement, he may properly surrender the deed to the grantor
in compliance with the terms of the escrow agreement.

    3. The purchaser of land upon instalments, who defaults in the
payment of an instalment as stipulated by the agreement, cannot
rescind the contract or breach the same and refuse to make the pay-
ments as they fall due, and thereupon maintain an action against
the vendor for instalments previously paid.

    4. Where a vendor rescinds a contract to sell real estate on in-
stalments or makes a breach thereof, or the vendee rescinds or
breaches the contract, and the vendor accepts such rescission and
acts thereon, the vendor may maintain his action to recover instal-
ments previously paid.

    5. Where a deed is placed in escrow subject to be delivered to
the grantee upon the payment of stipulated instalments at fixed
times, and the vendee fails to make the payments as provided by

the agreement, and the deed and escrow are returned to the vendor, the rights and interests of the vendee in the land are thereby terminated, and it is not necessary for the vendor to prosecute an action in foreclosure in order to divest the vendee of any interest in the property.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Chas. P. McCarthy, Judge.

Action for debt. Judgment for defendants. Plaintiff appeals. *Affirmed.*

T. C. Coffin, V. P. Coffin and Harry Keyser, for Appellant.

"The deposit of a deed in escrow subjects both parties to the conditions upon which it was deposited and neither can withdraw from the same." (*Tharaldson v. Everts,* 87 Minn. 168, 91 N. W. 467; *In re Cornelius' Estate,* 151 Cal. 550, 91 Pac. 329.)

The deed being delivered as an escrow it is no longer revocable by the vendor, but it will take effect whenever the condition has happened or been complied with on which it is to be delivered. (*Cannon v. Handley,* 72 Cal. 133, 13 Pac. 315; *Prutsman v. Baker,* 30 Wis. 644, 11 Am. Rep. 592; *Burnham v. Burnham,* 58 Misc. Rep. 385, 111 N. Y. Supp. 252; *Anderson v. Goodwin,* 125 Ga. 663, 54 S. E. 679.)

"A vendor who, after receiving money on the contract, rescinds it for the vendee's breach, has the burden to show, as against the vendee's claim for return of the money, what damages he has sustained by the breach." (*Green v. Barney,* 102 Cal. 18, 36 Pac. 1026.)

When parties to a contract stipulate that in case of a violation thereof the party making default shall pay a stipulated sum, the courts will take the sum so fixed as the injured party's measure of damages only when it appears that to do so will no more than compensate his loss, but, if the sum so fixed in such contract will more than compensate the innocent party, the court will regard the same as a penalty. (*Gillilan v. Rollins,* 41 Neb. 540, 59 N. W. 893; *McCarty v. Moorer,* 50

Tex. 287; *Dunn v. Morgenthau,* 175 N. Y. 518, 67 N. E. 1081; *North & South Rolling Stock Co. v. O'Hara,* 73 Ill. App. 691.)

No greater sum can be recovered under a penalty than that which will compensate the party suing for his actual loss. (*Willson v. City of Baltimore,* 83 Md. 203, 55 Am. St. 339, 34 Atl. 774; *Johnston v. Whitlemore,* 27 Mich. 463; *In re Dagenham Dock Co.,* L. R. 8 Ch. App. 1022.)

Cavanah, Blake & MacLane, for Respondents.

Where time is of the essence of a contract for the sale of real estate and the vendee fails to make payment upon the day specified, he cannot, because the contract is terminated by the vendor, maintain an action to recover back from the vendor payments previously made, regardless of whether a provision in the contract for the retention of such payments by the vendor in the event of the vendee's default is to be construed as one for liquidated damages or one for a penalty and void as such. (*Glock v. Howard etc. Co.,* 123 Cal. 1, 69 Am. St. 17, 55 Pac. 713, 43 L. R. A. 199; *List v. Moore,* 20 Cal. App. 616, 129 Pac. 962; *Oursler v. Thacher,* 152 Cal. 739, 93 Pac. 1007; *Poheim v. Meyers,* 9 Cal. App. 31, 98 Pac. 65; *Wheeler v. Mather,* 56 Ill. 241, 8 Am. Rep. 683; *Young v. Jordan,* 183 Ill. 459, 56 N. E. 85; *Downey v. Riggs,* 102 Iowa, 88, 70 N. W. 1091; *Roberts v. Yaw,* 62 Kan. 43, 61 Pac. 409; *Keefe v. Fairfield,* 184 Mass. 334, 68 N. E. 342; *Satterlee v. Cronkhite,* 114 Mich. 634, 72 N. W. 616; 4 Detroit Leg. N. 724; *Goldman v. Willis,* 64 App. Div. 508, 72 N. Y. Supp. 292; *Palmer v. Washington etc. Inv. Co.,* 43 Wash. 451, 86 Pac. 640; *Woodman v. Blue Grass Land Co.,* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920.)

The party who has advanced money or done an act in part performance of the agreement and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done. (*Hansbrough v. Peck,* 5 Wall. (U. S.) 497, 18 L. ed. 520; *Edgerton v. Peckham,* 11 Paige (N. Y.), 352.)

It is unnecessary, as is held in the cases of *Glock v. Wilson,* and *List v. Moore, supra,* to discuss whether the stipulation for forfeiture of payments is one for liquidated damages or for a penalty, and whether it is enforceable or is void.    There is a line of cases of which *Drew v. Pedlar,* 87 Cal. 443, 22 Am. St. 257, 25 Pac. 749, and *Green v. Barney,* 102 Cal. 18, 36 Pac. 1026, are examples, in which it is held that where rescission takes place by mutual consent the vendee may recover back payments previously made.    The cases in which such recovery is allowed, except those wherein the vendor himself is at fault, are cases of mutual rescission.    This rule is clearly distinguished in *Glock v. Howard, supra,* and also in *Merrill v. Merrill,* 103 Cal. 287, 35 Pac. 768, 37 Pac. 392.    (See, also, *Phelps v. Brown,* 95 Cal. 572, 30 Pac. 774; *Cleary v. Folger,* 84 Cal. 316, 18 Am. St. 187, 24 Pac. 280.)

A quite similar case, where a cancelation of a prior agreement for the purchase of land and surrender of possession thereunder was held to bar any recovery of the purchase payments theretofore made, is *Winton v. Spring,* 18 Cal. 451.

AILSHIE, C. J.—The appellant, William J. Hall, on about the 30th day of March, 1911, entered into a contract with James F. Yaryan and wife, whereby he agreed to purchase from them a farm for the sum of $12,585.    A deed was executed and placed in escrow in the First National Bank of Idaho.    The escrow agreement was indorsed on the envelope in which the deed was placed, and recited that the first payment of $2,000 had been made and the receipt of that sum was acknowledged.    It then provided for the payment of $1,000 on the 30th of March, 1912, $1,000 on March 30, 1913, and the balance of $8,585 on or before seven years after the date of the escrow.    It was then recited in this agreement, which was signed by both parties, that "time is the essence of this agreement, and should the grantee herein fail to make payments as herein agreed, then this escrow and deed to be returned to the grantors herein and all payments made at that time to be kept by the grantors or their heirs or assigns as liquidated damages."    Hall was unable to meet the $1,000

payment which fell due March 30th, 1912, and so a few days before it fell due he went to see Yaryan about the matter, telling him that he was not going to be able to make the payment and that he did not want to lose the $2,000 that he had paid. Yaryan insisted that he would have to live up to the terms of his contract and that if he failed to make the payment he would forfeit what had been paid. No agreement was reached at this time and Hall returned home, and some time thereafter and subsequent to the date on which the payment had fallen due, they met and had a further interview with reference to the matter, which resulted in the execution of a lease on these premises which was dated March 30, 1912, but which, as a matter of fact, was executed on about the 13th day of May, 1912. This was an ordinary form of lease for a period of seven months from the 30th day of March, and the only reference which it contained to the previous agreement to sell or the escrow agreement was the closing paragraph thereof which is as follows: "It is further understood and agreed that should the second party herein make payments to the first party herein, as shown by one certain escrow dated March 30, 1911, on or before July 1, 1912, then this lease is to be delivered up and considered void and of no effect whatever." Hall occupied and cultivated the land, and nothing further was done about the matter until sometime about the expiration of the term of the lease. No further payment was made, and no further claim was asserted by Hall under the escrow agreement. After the expiration of the term of the lease, Hall was dispossessed by proceedings under the unlawful detainer statute. He thereafter commenced this action to recover the amount of the payment he had made under the escrow agreement and the value of taxes paid and improvements placed upon the land during his occupancy. Judgment was entered in favor of the defendant and plaintiff appealed.

The trial court found that appellant failed to make his payments in accordance with the terms of the escrow agreement and that thereafter the vendor and vendee had a controversy over the matter and finally reached an agreement which was

embodied in the lease heretofore mentioned, dated March 30, 1912, but which was actually executed on or about the 13th day of May of that year. The court then finds: "That it was the intention of this lease to compromise and settle the dis-. pute between the parties by allowing the plaintiff until July 1, 1912, within which to meet his one thousand dollar payment, and the consideration therefor moving to the plaintiff was extension of time allowed him to make his payment, and the consideration moving to the defendants was the renunciation by the plaintiff of his rights as purchaser under the contract of March 30, 1911, and his acceptance of the status of tenant, and that by said lease the contract of March 30, 1911, was canceled and abrogated and rights and liabilities settled and determined." Appellant contends that this lease amounted to nothing more than an extension of time in which to make payment of the thousand dollars which fell due March 30th, and that this was in effect an extension of the escrow agreement for the making of this payment until July 1st.

It appears from the evidence that some time in April, Yaryan went to the bank and took down the escrow agreement and deed which had been deposited in the bank. Hall, however, had no knowledge or information of the taking down of the deed and escrow until some time in November and after the expiration of the lease itself. It is clear, therefore, that his failure to make the thousand dollar payment on the first of July was in no way influenced by the fact that Yaryan had taken the deed and escrow agreement out of the bank. On the other hand, if he had made the payment within the time or tendered the payment, there is no question but that he would have had a right to enforce the terms of the original agreement even though the vendor had reclaimed the deed and escrow agreement. While Yaryan may have had no right to demand the deed and agreement prior to the first of July, on the other hand there was no breach of faith or duty on the part of the bank in surrendering up the deed and agreement, for the reason that it does not appear that the bank had been in any way apprised of the subsequent agreement extending the time until July 1st. The original escrow agreement was

directed to the bank as the depositary of the deed. ˙ The only instruction or direction that the bank had was contained in this escrow agreement indorsed on the envelope containing the deed. Without further or additional instruction, the bank had a right to act upon the directions contained in this agreement and was clearly within its rights when it surrendered up the deed and agreement. On the other hand, if Hall had made his payment within the time stipulated in the extension as contained in this lease, his rights under the escrow would have been preserved. This did not amount to a rescission of a contract on the part of Yaryan.

The decisive question confronting us in this case is the right of the vendee to recover payments made on a contract to purchase after a breach of the contract by him. Appellant had entered into a contract to purchase a tract of land for a stipulated sum, payable in instalments. He failed to make a payment as provided for in the agreement. He seems to have realized that this was a forfeiture of his rights and the money previously paid, and thereafter entered into this lease and extension of time. He failed to make payment within the time granted by the extension. He is in the position now of suing to recover money under a contract which he admittedly violated himself, and the loss under which occurred by reason of his not having lived up to the terms of his contract. The law is well settled that a purchaser of land in default for failure to make payments of the purchase price, as stipulated by the agreement or contract of purchase, cannot rescind the contract or breach the same and refuse to make the payments and thereupon maintain an action against the vendor for the instalments previously paid. (*Glock v. Howard & Wilson Colony Co.*, 123 Cal. 1, 69 Am. St. 17, 55 Pac. 713, 43 L. R. A. 199; *List v. Moore*, 20 Cal. App. 616, 129 Pac. 962; *Hansbrough v. Peck*, 5 Wall.· (U. S.) 497, 18 L. ed. 520; *Young v. Jordan*, 183 Ill. 459, 56 N. E. 85; *Downey v. Riggs*, 102 Iowa, 88, 70 N. W. 1091; *Keefe v. Fairfield*, 184 Mass. 334, 68 N. E. 342; *Satterlee v. Cronkhite*, 114 Mich. 634, 72 N. W. 616; *Goldman v. Willis*, 64 App. Div. 508, 72 N. Y. Supp. 292; *Palmer v. Washington Securities Inv. Co.*, 43 Wash. 451, 86

Pac. 640; *Woodman v. Blue Grass Land Co.,* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920.) It seems to be equally well settled, on the other hand, that if the vendor rescinds the contract or makes a breach thereof, then and thereupon the vendee may accept the rescission and recover the money he has paid under his contract; or if the vendor accept the breach or abandonment or rescission made by the vendee, then the vendee may recover the money paid under the agreement. This doc. trine is recognized in the leading case of *Lytle v. Scottish-American Mortgage Co.,* 122 Ga. 458, 50 S. E. 402, upon which appellant relies.

The contention by appellant that this agreement provided a penalty and stipulated for a forfeiture and that in so far it was void, and that to deny the appellant the right to recover here would have the effect of enforcing such forfeiture, is not well taken, for the reason that without any such stipulation in the agreement or contract the legal effect of a breach would be the forfeiture of the sum paid, or rather it terminates the contract and leaves the parties in the position they place themselves in and presumes that each has received an adequate value and compensation for the amount he has laid out and expended under the contract. It must not be forgotten that time was made of the essence of the stipulation and agreement here involved, in so far as the payment of the instalments was concerned.

We think that appellant's authorities as to the nature and effect of an escrow are sound and correctly state the law. (1 Devlin on Deeds, p. 578; *Bronx Investment Co. v. National Bank of Commerce,* 47 Wash. 566, 92 Pac. 380; *Tharaldson v. Everts,* 87 Minn. 168, 91 N. W. 467; *In re Cornelius' Estate,* 151 Cal. 550, 91 Pac. 329.) It would be most unsafe, however, and indeed disastrous in a state like ours, to hold that every time a deed is placed in escrow the vendee therein acquires such an interest in the property as to require a foreclosure in order to divest him of such interest. When he fails to comply with the terms of the escrow agreement, the vendor is clearly entitled to take down the deed and thus terminate the vendee's interest and right therein.

Counsel for appellant have placed a great deal of stress upon the principle of the common law which forbade contracts which attempted to stipulate and determine the amount of damages which should be awarded in the event of a breach of the contract, and they assert that the same principle which had long been the law was embodied in chap. 11, art. 8, of 8th and 9th William III, enacted in 1696, which statute is embodied in sec. 1670 of the Civil Code of California. It is contended that in substance the same law is in effect in this state, even though we have no specific statute on the subject. We think counsel is correct in this proposition, but, as above noted, we do not agree that it is applicable to the case at bar or that its consideration here is essential to the determination of a case of this character.

We conclude that the judgment in this case should be affirmed, and it is so ordered, with costs in favor of respondent.

Sullivan, J., concurs.