(December 27, 1923.)

## JOHN HOLVERSON, Respondent, v. RICHARD M. EVANS and SUSAN R. EVANS, Appellants.

[224 Pac. 1067.]

CONTRACTS TO SELL REAL PROPERTY—MUTUAL RESCISSION—PURCHASE
MONEY—RECOVERY—PAROL EVIDENCE.

1. If an executory contract for the sale of real property is rescinded by mutual agreement of the parties no recovery of the purchase money can be had unless the rescission contract either expressly or impliedly provides therefor.

2. If a contract rescinding an agreement for the sale of real property is in writing it is subject to the same rule as other contracts as to being added to or varied by parol evidence.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action for money had and received. Judgment for plaintiff. *Reversed, and action dismissed.*

M. H. Eustace and Geo. Donart, for Appellants.

Where there is a written contract of rescission the rights of the parties are limited by the stipulations contained in the contract of rescission. (2 Black on Rescission & Cancelation, secs. 535, 616; 3 Williston on Contracts, sec. 1827; 2 Elliott on Contracts, sec. 1857; 3 Page on Contracts, sec. 2457; 39 Cyc. 1637; *Tice v. Zinsser,* 76 N. Y. 549; *Law Credit Co. v. Tibbitts,* 160 Cal. 626, 117 Pac. 772; *In re Sutton's Estate,* 200 Pa. St. 163, 49 Atl. 776, *Schamper v. Ullrich,* 131 Wis. 524, 111 N. W. 691; *Winton v. Spring,* 18 Cal. 451; *Lowry v. Robinson,* 3 Neb. (Unof.) 145, 91 N. W. 174.)

There can be no mutual rescission where either of the parties is in default. (39 Cyc. 2002; 2 Black on Rescission & Cancelation, sec. 440; 2 Williston on Contracts, sec. 791; *Bryson v. Crawford,* 68 Ill. 362; *Baston v. Clifford,* 68 Ill. 67, 18 Am. Rep. 547; *Battle v. Rochester City Bank,* 5 Barb.

(N. Y.) 414; *Norris v. Letchworth,* 167 Mo. App. 553, 152 S. W. 421; *Palmer v. Washington Securities Inv. Co.,* 43 Wash. 451, 86 Pac. 640.)

After a contract for the sale of real estate has been forfeited by the purchaser the contract is void and there can be no rescission, either mutual or otherwise. (39 Cyc. 1667 (citing note 48), 2002; 13 C. J. 600, sec. 621; *Hall v. Yaryan,* 25 Ida. 470, 138 Pac. 339; *Fairchild-Gilmore-Wilton Co. v. Southern Refining Co.,* 158 Cal. 264, 110 Pac. 951; *Gauger & Co. v. Sawyer Lumber Co.,* 88 Ark. 422, 115 S. W. 157; *Provident Loan Trust Co. v. McIntosh,* 68 Kan. 452, 1 Ann. Cas. 906, 75 Pac. 498; *Mason v. Edward Thompson Co.,* 94 Minn. 472, 103 N. W. 507; *Norris v. Letchworth, supra.*)

Where joint purchasers under a contract for the sale of real estate are in default, neither party has rights under said contract which are assignable to the other. (C. S., sec. 5365; 5 C. J. 879 (citing notes 17 and 18), 963 (citing note 27); also 970 (citing notes 66–69); 13 C. J. 622 (citing note 67); *Kuyhendall v. Schell* (Tex. Civ. App.), 224 S. W. 298.)

In an action for return of purchase money on an alleged rescission of a contract for the sale of real estate the vendor is entitled, in being placed *in statu quo,* not only to recover the rental value of the premises during the time he has been deprived of its possession, but to any damages which he may have sustained and any damages sustained by reason of a breach of the covenants of the contract. (39 Cyc. 2055; 2 Black on Rescission & Cancelation, secs. 535, 626, 632; *Allison v. Cooke,* 112 Ky. 212, 65 S. W. 342, 66 S. W. 392; *Law Credit Co. v. Tibbitts, supra; Linville v. Wiedrich,* 108 Wash. 1, 182 Pac. 578.)

T. A. Walters, for Respondent.

"Where the parties mutually agree to rescind the contract (relating to the sale of real estate) there being no express stipulation with reference to the payment or payments already made thereunder, the law will imply a promise

on the part of the vendor to refund such payment or payments to the purchaser, and the latter may maintain an action to recover back the same." (39 Cyc. 2002; 27 R. C. L., sec. 400; *Gwinn v. Calegaris,* 139 Cal. 384, 73 Pac. 851; *Bernardo v. Soderman,* 19 Cal. App. 161, 124 Pac. 866; *Burmester v. Horn,* 35 Cal. App. 549, 170 Pac. 674; *Hieatt v. Gassen,* 41 Cal. App. 620, 183 Pac. 227; *Glock v. Howard & W. Colony Co.,* 123 Cal. 4, 69 Am. St. 17, 55 Pac. 713; 43 L. R. A. 199; *Cornely v. Campbell,* 95 Or. 345, 186 Pac. 563, 187 Pac. 1103; *Woodard v. Willamette Valley Irr. Co.,* 89 Or. 10, 173 Pac. 262; *Smith v. Treat,* 234 Ill. 552, 85 N. E. 289; *Gwynne v. Ramsey,* 92 Ind. 414; *Pedley v. Freeman,* 132 Iowa, 356, 119 Am. St. 557, 109 N. W. 890; *Weitzel v. Leyson,* 23 S. D. 367, 121 N. W. 868; *Evas v. Bentley,* 9 Tex. Civ. 112, 29 S. W. 497, 36 S. W. 1070; *Foxley v. Rich,* 35 Utah, 162, 99 Pac. 666; *Buena Vista Co. v. McCandlish,* 92 Va. 297, 23 S. E. 781.)

"If a contract for the sale of land is mutually rescinded, the purchaser is entitled to recover back whatever he may have paid on the purchase price, even though he may have been in default at the time of such rescission." (*Shiveley v. Semi-tropic Land & Water Co.,* 99 Cal. 259, 33 Pac. 848; *List v. Moore,* 20 Cal. App. 616, 129 Pac. 962; *Gwinn v. Calegaris,* 139 Cal. 384, 73 Pac. 851; *Hurley v. Anicker,* 51 Okl. 97, 151 Pac. 593, L. R. A. 1918B, 538; *Nason v. Patten,* 88 Kan. 472, 129 Pac. 138.)

This is not an action growing out of the contract for the purchase of real estate, but an action for money had and received. (*Shiveley v. Semi-tropic Land & Water Co., supra; Lemle v. Barry,* 181 Cal. 1, 183 Pac. 150; *Daly v. Berstein,* 6 N. M. 380, 28 Pac. 764; *Peloian v. Waldman,* 54 Cal. App. 116, 201 Pac. 344; 27 R. C. L., sec. 383.)

Where a contract for the sale of land is rescinded by mutual consent the rights of the parties under the contract are extinguished. Neither can base any claim thereon or sue for a breach or compel specific performance. (39 Cyc. 1358; 13 C. J. 602, sec. 627; 2 Black on Rescission & Can-

celation, sec. 535; *House v. Piercy,* 181 Cal. 247, 183 Pac. 807; *Lemle v. Barry, supra.*)

Where the purchaser sues for money paid on a contract alleging that the same has been rescinded and the vendor interposes a counterclaim for rent, he thereby recognizes the purchaser as a tenant and acquiesces in such rescission. (*Woodard v. Willamette Valley Irr. Land Co.,* 89 Or. 10, 173 Pac. 262.)

DUNN, J.—On August 18, 1919, appellants, who are husband and wife, entered into a written contract with respondent and one Charley Driscol, by which appellants agreed to sell and respondent and Driscol agreed to buy forty acres of land for $12,000, $1,000 to be paid in cash and the balance to be covered by eight promissory notes. The first of the notes, which was for $2,000, came due one month from the date of the contract and was paid. In addition there was paid to appellants on May 20, 1920, $270 interest on the deferred payments. Of the remaining notes the first two were for $2,000 and $2,500 each, to come due on November 1, 1920, and January 1, 1923, respectively. The next four were for $1,000 each, maturing on November 1, 1924, 1925, 1926 and 1927, respectively, and the last for $500, due on November 1, 1928. All bore interest at 6 per cent per annum.

The contract provided that the purchasers should be entitled to possession of the premises on September 18, 1919, and continue in possession as long as they complied with its terms, and that they should pay the taxes for 1920 and subsequent years. It also provided that time should be of its essence and that on failure by the purchasers to make any of the deferred payments they should forfeit to appellants all money theretofore paid on the contract.

The purchasers defaulted in the payment of the second note for $2,000, which was due November 1, 1920. It may be fairly inferred from the record that immediately after appellants, on account of this default, began proceedings to dispossess the purchasers and claim forfeiture of the pay-

ments made, respondent, through his counsel, submitted to appellants the rescission contract involved in this action, which was signed by appellants. This rescission contract, after reciting the making of the sale contract above mentioned, the assignment of Driscol's interest therein and rights thereunder to Holverson, the default of Holverson, failure to pay the note which came due November 1, 1920, and the interest due at that time on deferred payments, says:

"Now, Therefore, these presents, Witnesseth:

"That for and in consideration of said party of the second part yielding up and delivering to the parties of the first part the complete and unconditioned possession of the above described premises, it is mutually agreed by and between the parties hereto that the said sale contract be, and the same is hereby rescinded, canceled, annulled and abandoned."

This rescission contract is dated March 16, 1921, and was signed and acknowledged by appellants on March 19, 1921.

On April 4, 1921, respondent began this action against appellants, alleging that by reason of the rescission contract appellants had become indebted to him in the sum of $3,270, the amount paid to appellants on the sale contract, with interest on said amount from March 30, 1921.

Appellants demurred on the ground that the complaint stated no cause of action against them. The demurrer was overruled, answer was filed and the case was tried, resulting in judgment for respondent, from which this appeal was taken.

Appellants assign numerous errors, but it will be unnecessary to pass upon any except the first, which involves the sufficiency of the complaint.

It is the contention of appellants that, since the parties have entered into a written contract to rescind the sale contract, the rescission contract, being in plain and unambiguous language, and there being no charge of fraud or mistake in the making thereof, must be held to embody the entire contract of the parties, and that to permit evidence

of an implied contract on the part of appellants to repay the purchase money would be in violation of the well-settled rule against adding to or varying, by parol evidence, the terms of a written contract.

On the other hand, respondent contends that since there was a mutual rescission without an express agreement that the vendors should retain the payments made on the purchase price, the law implies an agreement on their part to refund the amounts received thereon.

We find no decision of this court touching the particular question involved here, and we therefore feel at liberty to determine the controversy thus presented in accord with principle, reason and justice rather than upon the authority of decided cases, the majority of which appear to be against our position.

Generally, we think, a majority of the cases hold that in the event of a naked rescission by mutual agreement of a contract for the sale of real property the law implies an agreement that the vendor will repay the purchase money received less the reasonable value of the use of the property, if the vendee has been in possession, unless it affirmatively appears from the rescission contract that such repayment was not to be made.

This does not seem to us a reasonable or just rule. Here are parties admittedly capable of making contracts for themselves. Why should not the rule apply that it is the duty of the law to enforce, not to make, contracts, thus leaving the rights of the parties to be adjusted according to the contract that they have made? Why should the law lay down a hard and fast rule by which an intention is imputed to the parties, without facts upon which to base it, and which is as likely to promote injustice as justice?

Take the present case as an example. It might easily be that the vendees considered themselves as better off by a thousand or more dollars to be released from liability on the $9,000 of notes still unpaid, even though they lost the $3,270 paid on the contract, than if they were compelled to complete the purchase. If so, it would be extremely

unjust to the vendors to say that, in addition to releasing the vendees from the payment of the remaining notes, they must refund the payments received, notwithstanding the rescission agreement contained no intimation of such intention by the parties.

We think the rule suggested by Mr. Williston is the correct one, and we therefore adopt it:

"Where at the time of rescission of a bilateral contract it has been partly performed on one or both sides, the parties may agree simply to forego further performance and let past matters stand where they are, or they may agree not only to forego future performance but to restore the original status by returning payments already made or paying for other performance which has been rendered. Which of these contracts the parties in a particular case have made can depend on no rule of law, but on a determination of what the terms of their contract in fact were; and if that contract while providing for cessation of further performance, does not provide for the return of past payments or compensation for past performance, there can be no recovery of such payments or compensation, for the burden of proving any right is on one who asserts it. When a court says:

"'As a general rule when a contract for the sale of land has been rescinded by the mutual assent and agreement of the parties, the contract is at an end, and, there being no agreement to the contrary, the vendee, not being at fault, may recover back the money paid on his contract,' it can only be replied that there is no reason why an agreement to rescind a contract for the sale of land should be subject to any other rule than an agreement to rescind any other contract, and that to allow recovery of such payments on rescission of any contract by an agreement which does not provide for it is unwarrantably adding a term to the agreement of the parties. If the principle is sound not only payments made but property transferred or services rendered under any kind of contract should likewise form the basis of recovery where the parties agree to forego fur-

ther performance of a partially executed contract. Of
course, a contract to restore the original status like any
other contract need not be in express terms, but to justify
an action to restore that status on rescission of a contract
by mutual assent, it must be found on a fair interpretation
of the words or acts of the parties that they expressed an
intention that that status be restored.'' (Williston on Con-
tracts, vol. 3, sec. 1827, p. 3146; *McCreery v. Day,* 119 N. Y.
1, 16 Am. St. 793, 23 N. E. 198, 6 L. R. A. 503; *Eames
Vacuum Brake Co. v. Prosser,* 157 N. Y. 289, 51 N. E. 986.)

In the case at bar we think there is nothing in the re-
scission contract to indicate that there were any terms in
the minds of the parties not expressed in the agreement,
and we see no reason for refusing to apply to this con-
tract the well-settled rule against the admission of parol
testimony to add to or vary the terms of a written contract.

So far as this case is concerned, however, we think it
comes within the rule adopted by some of the courts that
holds the vendor to an implied liability to refund in case
of a mutual agreement to rescind a contract for the sale of
real property. The contract in the case at bar sets out
the condition upon which the rescission was to be had.
It is said that the contract of sale should be ''rescinded,
canceled, annulled and abandoned in consideration of said
party of the second part yielding up and delivering to
the parties of the first part the complete and unconditioned
possession'' of the premises. This is simply a statement
of the express terms of rescission, and the presumption
is that this contract contains all the terms. In the case
of *Law Credits Co. v. Tibbitts,* 160 Cal. 626, 117 Pac. 772,
there was a mutual rescission in writing and in addition
an agreement by the purchaser, as here, to surrender posses-
sion of the property, and the California court held that the
purchaser had done all she was required to do, that is, sur-
render possession of the property, and that the seller was
to do nothing but release the buyer from his obligation
to pay under the original contract, and that he had done;
that since the rescission contract contained no stipulation

requiring the seller to refund payments made or the purchaser to pay for the use of the premises it would be inferred that there was a mutual waiver of all such claims. In our opinion it would be difficult, if not impossible, to find a case whose facts would be more nearly ''on all-fours'' with those of the case at bar.

In *Tice v. Zinsser*, 76 N. Y. 549, we think the substance of the rescission contract was the same as here, and the court said:

''The amount claimed by the plaintiff clearly arose under the contract of sale, and was embraced within the terms and the very letter of the agreement he subsequently executed. It was a part of his interest by virtue thereof; and when he surrendered all his right, title and interest under the same, and agreed that the contract from the date of the instrument be cancelled and of no effect, he relinquished all claim to the $1,000 he had paid. The parties intended evidently to say, that from that time the plaintiff should be released from all further liability to pay; and that what each one had paid or lost by the contract should be given up, surrendered and canceled, as between themselves. The agreement of the parties having been reduced to writing, and such writing being susceptible of a plain interpretation, it disposes of the case.''

In *Lowry v. Robinson,* 3 Neb. (Unof.) 145, 91 N. W. 174, the terms of rescission were somewhat more numerous than here, but it seems to us that this can make no difference. If the parties stipulate in writing that the contract shall be rescinded on the one condition that the buyer shall surrender possession, as here, the rules applicable to written contracts should apply as fully and effectively as if there were numerous conditions. In that case the court said:

''No fraud or mistake is alleged in the making of the memorandum of cancelation, and plaintiff cannot now be heard to say that the contract was canceled upon other or different conditions than those set out in the writing signed.''

This rule is also approved by Black on Rescission and Cancelation, vol. 2, sec. 417, p. 1028:

"Parties to a contract for the purchase and sale of real estate may always rescind it by mutual consent, and an agreement for such rescission will be binding on them both. If no terms of rescission are agreed on, the undoing of the original contract will be subject to the usual condition of a mutual restoration to the *status quo,* that is, the vendor will be entitled to resume possession of his property and the vendee to a restoration of whatever he may have paid under the contract. But it is entirely competent for the parties to determine upon other or additional conditions, and if the agreement for rescission sets out the terms and conditions fixed on, it is binding on them, and neither party can be heard to say that the cancelation of the contract was based on any different terms."

The contract in the case at bar contained one condition on which rescission was to be had and it is clear that the minds of the parties did not meet on any other terms than those expressed in the contract.

The demurrer to the complaint should have been sustained. No cause of action for the return of the purchase money exists against appellants by reason of the rescission contract. The judgment is therefore reversed and the district court is directed to dismiss the action. Costs to appellants.

McCarthy and William A. Lee, JJ., concur.

WM. E. LEE, J., Concurring in Part and Dissenting in Part.—I concur with the majority in reversing the judgment, but for reasons other than those set forth in the majority opinion. This case was originally assigned to me for the purpose of writing the opinion of the court. The opinion prepared by myself was agreed to as the opinion of the court, sitting in division, although Mr. Justice Dunn concurred merely in the conclusion reached. Petitions for rehearing were filed, and because of the importance of the question involved, a rehearing was unanimously agreed to.

Having devoted some time to a study of the principal question involved in this case, I am persuaded to publish my views and comment briefly upon the majority opinion.

Under date of March 16, 1921, the vendors and Holverson made and entered into an agreement which recited and identified the original contract of sale, the assignment of Driscol's interest in the contract of sale and all rights arising therefrom to respondent, and the failure of the vendees to make the November 1, 1920; payment and interest due on deferred payments. The contract then contained the following:

"That for and in consideration of said party of the second part yielding up and delivering to the parties of the first part the complete and unconditioned possession of the above described premises, it is mutually agreed by and between the parties hereto that the said sale contract be, and the same is hereby rescinded, canceled, annulled and abandoned."

On April 4, 1921, respondent commenced an action against appellants to recover the sum of $3,270, the amount paid on ·the contract for the purchase of the land. Appellants filed a demurrer, which was overruled. Respondent alleged the making of the sale contract, the payment thereon by him of $3,270, the assignment of Driscol's interest to him, the mutual rescission of the sale contract, and the demand for the return of the amount paid on the original contract together with interest. The answer contained specific denials of the allegations of the complaint, and set up separate answers and affirmative matter by way of cross-complaint in an effort to recoup against any ·judgment that respondent might obtain. The court struck from the affirmative defenses everything except the allegations relating to the rental value of the land and the value of certain personal property not returned to the vendors. The jury returned a verdict in favor of respondent for $3,072.48, and judgment for that amount was thereupon entered. This appeal is from the judgment.

In this case, certain questions of law are presented for consideration. Can there be a rescission of a contract for the sale of real estate where the purchaser is in default in his payments? The rules surrounding the making of a rescission contract are the same as those governing the making of any other contract, and the making of a rescission agreement is nothing more or less than the making of a new agreement. A purchaser of land in default because of a failure to make the payments on the purchase price cannot fail or refuse to make such payments and recover the instalments previously paid. *Hall v. Yaryan*, 25 Ida. 470, 138 Pac. 339, and cases therein cited.

"It seems to be equally well settled, on the other hand, that if the vendor rescinds the contract or makes a breach thereof, then and thereupon the vendee may accept the rescission and recover the money he has paid under his contract; . . . . " (*Hall v. Yaryan, supra.*)

The parties may also mutually agree to abandon and rescind the original contract without regard to whether or not either party is in default, in which event, in the absence of any specific terms of settlement, the law permits a recovery, by the vendee, of the payments made. This was done by the parties in this case. The vendees were in default, and the vendors, instead of availing themselves of their rights resulting from the default, made and entered into the contract of rescission, in which it was mutually agreed "by and between the parties hereto that the said sale contract be and the same is hereby rescinded, canceled, annulled and abandoned." Upon the consummation of the cancelation agreement, the vendees became entitled to a return of the money paid the vendors. But for the fact, however, that these parties mutually rescinded and abandoned the original contract of sale, the vendees would have no standing whatever, under the facts in this case, to recover back the payments made by them upon the purchase price of the land. The effect of the mutual rescission was to nullify the existing contract completely and restore the parties to the relation that existed immediately before the

original contract was made. The law intends, as the effect of a naked mutual rescission, that the parties be placed in their former situation. It follows, therefore, that upon mutual rescission, by the parties, of the contract for the sale of the land, the vendees became immediately entitled to repayment of what had been paid on the purchase price of the land. (*Glock v. Howard & Wilson Colony Co.,* 123 Cal. 1, 69 Am. St. 17, 55 Pac. 713, 43 L. R. A. 199; *Woodard v. Willamette Valley Irr. Land Co.,* 89 Or. 10, 173 Pac. 262; *Connelly v. Malloy,* 105 Wash. 464, 180 Pac. 469; *Hurley v. Anicker,* 51 Okl. 97, 151 Pac. 593, L. R. A. 1918B, 538.)

"If there is a mutual rescission of the contract, the purchaser is ordinarily entitled to recover back whatever he may have paid on the purchase price, even though he may have been in default at the time of such rescission, and it is held immaterial that the contract provides that on default in payments he shall forfeit his rights and all payments theretofore made." (27 R. C. L. 641, sec. 400 and cases cited.)

"Where the parties mutually agree to rescind the contract, there being no express stipulation with reference to the payment or payments already made thereunder, the law will imply a promise on the part of the vendor to refund such payment or payments to the purchaser, and the latter may maintain an action to recover back the same." (39 Cyc. 2002.)

"Where a contract for the sale of land is rescinded by mutual consent, the rights of the parties under the contract are extinguished. Neither can base any claim thereon, or sue for a breach, or compel specific performance. The vendor acquires the equitable interest owned by the purchaser, and of course retains the legal interest formerly owned by himself; and of course he cannot, after such rescission, maintain an action for the purchase price. The purchaser is entitled to a return of the purchase money. So the vendor is ordinarily entitled to a fair rental value for the use and occupation of the lands less the value of the permanent

improvements placed thereon by the purchaser and disbursements for taxes." (39 Cyc. 1358.)

"Upon the other hand, after the vendee's breach of the covenant to pay, what are the vendor's rights? First, to stand upon the terms of his contract, and sue for its breach under section 3307 of the Civil Code; second, still resting upon the contract, he may remain inactive, yet retain to his own use the moneys paid by the vendee, so that it is of no moment whether or not the contract declares that such moneys shall upon the breach be forfeited as liquidated damages; third, going into equity, still upon his contract, he may seek specific performance; *or, finally, if his generosity prompts him so to do, he may agree with the vendee for a mutual abandonment and rescission, in which last case, and in which last case alone, the vendee in default would be entitled to a repayment of his money."* (*Glock v. Howard & Wilson Colony Co.,* 123 Cal. 1, 69 Am. St. 17, 55 Pac. 713, 43 L. R. A. 199.) (Italics mine.)

Appellants contend, with great earnestness and ability, that the written agreement of rescission embraces the entire agreement between the parties, and that since the mutual rescission agreement does not provide for a refund to the vendee of the money paid to the vendors on the purchase price of the land, the vendee cannot now maintain an action for the recovery of such payments. In support of their theory, counsel cite the cases of *Law Credit Co. v. Tibbitts,* 160 Cal. 626, 117 Pac. 772; *Tice v. Zinsser,* 76 N. Y. 549, and *Lowry v. Robinson,* 3 Neb. (Unof.) 145, 91 N. W. 174.

The Tibbitts case comes nearer supporting appellants' contention than any other decision brought to my notice. However, the rescission agreement in that case was wholly executory, and the rescission of the original contract for the sale of the land was conditioned upon the performance by the parties, within a stated time, of the terms of the rescission agreement. In the case at bar, the rescission agreement was a naked, mutual, executed rescission which left nothing to be done by either party to effect a rescission. A read-

ing of the Tibbitts case will show that in addition to the surrender of the land in order to effect a rescission, the vendee agreed to deliver, within ten days, certain furniture received from the vendor at the time she took possession of the real property, and deliver the real as well as the personal property "without cloud of title or lien thereon by her imposed." In that case, the court said:

"Here was a mutual agreement to rescind—expressed and reduced to writing—containing express terms of settlement and, it must be presumed, all the terms upon which the parties had agreed for the settlement of their controversy—an agreement not to be varied or added to by parol. The parties have here done for themselves what, in the absence of express agreement, the court must have done for them. They have adjusted their reciprocal rights by defining their respective obligations. . . . . "

The case of *Tice v. Zinsser, supra,* would also appear to support appellants' claim, except for the interpretation the court placed on the rescission agreement. The court said:

"As a general rule, where there is rescission by mutual consent, or by the terms of the contract, or the act of the vendor, the vendee is entitled to recover whatever he has paid toward the purchase money. . . . . This general rule does not, however, apply where there is an agreement connected with the rescission which restricts its operation and effect. *Here there was a mutual release in writing, by each of the parties, of all right, title and interest under and by virtue of the contract; and in this respect the case differs very materially from one where there is no limitation and the surrender is without any qualification."* (Italics mine.)

The case of *Lowry v. Robinson, supra,* does not support appellants' position. In that case, there was a default and a mutual rescission upon the following conditions:

" 'The notes given under said contract to be surrendered; Lowry to surrender possession on or before May 9, 1898; said Lowry to remove the barn erected on part of SW.¼ . . . . within one year from this date, and is to pay for the use of the ground at the rate of $5 per year.' "

The court commented on these conditions as follows:

"We are of opinion that the contract, setting out the conditions of the rescission or cancelation as it does, necessarily excludes other conditions, and that, as it does not provide for repayment of any part of the purchase money paid, it must be held that the parties did not intend or understand that there should be a repayment."

The contract of rescission in the case at bar attempts to do one thing only—to rescind the original contract for the sale of the land. It leaves everything else open, and makes no reference to the return of the money paid by the vendee upon the purchase price, or to any other items which might properly have been embraced within its terms. It merely rescinds the original contract and leaves everything else to be adjusted by and according to law.

Since it is my view that the rescission agreement had the effect of restoring the parties to the relation they occupied, respectively, prior to the execution of the original contract, and that upon execution of the rescission agreement, the vendees became entitled to a return of the money paid the vendors, it is necessary to examine some of the other assignments of error.

Appellants complain of the action of the court in sustaining respondent's motion to strike certain allegations of their amended answer and cross-complaint, by which they attempted to allege and establish a set-off against respondent. These allegations were based upon the alleged failure of the vendee to pay taxes and water charges, on account of damage resulting from the use of excess water in irrigation, loss of some fruit trees because of a failure to spray, and loss occasioned on account of depreciation in the value of the land. The court struck out all the affirmative matter except that relating to the rental value of the land and to compensation for certain personal property sold with the land to the vendees and which was not returned to the vendors.

Whatever right appellants ever had to recover of respondent because of his failure to make payment of taxes

and water charges, on account of the use of too much water in irrigation, for damage to fruit-trees because of a failure to spray, and for depreciation in the value of the land, grew out of and existed by reason of the original contract, and was "rescinded, canceled, annulled and abandoned" by the mutual rescission agreement. By the rescission agreement, appellants surrendered the foregoing as well as any other rights they had under the original contract. The stricken allegations are based upon the theory that the original contract is still in full force and effect. The mutual rescission of the original contract nullified appellants' right to maintain an action for its enforcement or for damages for its breach. The rescission destroyed all the vitality of the original contract, and the relation of the parties, in so far as this case is concerned, became as though they had never entered into the original contract. I am, therefore, of the opinion that the action of the trial court in sustaining the motion to strike such allegations was proper. (*Lemle v. Barry,* 181 Cal. 1, 183 Pac. 150; *House v. Piercy,* 181 Cal. 247, 183 Pac. 807; *Chesley v. Soo Lignite Coal Co.,* 19 N. D. 18, 121 N. W. 73; 39 Cyc. 1358.)

In Black on Rescission and Cancelation, vol. 2, sec. 535, the author, in treating of the results that flow from the mutual rescission of a contract, says:

"All breaches of the contract are waived by the rescission, and no action can be maintained for any such breach, nor upon any cause of action arising out of the abrogated contract, nor for damages for its nonperformance, nor for compensation for being prevented from performing under it."

Appellants specify as error the giving by the court of instruction No. 4, in which the court did not instruct the jury to allow appellants any offset, to which the jury might find appellants entitled, on account of the alleged fair rental value of the land. This was an issue in the case, and considerable testimony was adduced by the parties with respect thereto. This omission was not cured by the other instructions. Appellants were entitled to this offset, and they were entitled to have the court charge the jury to that

effect. Without including a charge to the jury concerning the rental value of the land, instruction No. 4 does not state the rule of law applicable, and it cannot be presumed that the jury was not misled and that appellants were not prejudiced thereby.

There is no doubt that the majority is supported, in its admitted refusal to follow the law as laid down by a great majority of the courts, by the quotation from Professor Williston. It is of interest, however, to note that only one of the two decisions (both from New York) cited by Professor Williston in support of his view is based on the rescission of a contract for the sale of land, and that each of the two rescission agreements, out of which those cases arose, contained many terms of settlement which render the rule contended for here wholly inapplicable.

I submit, however, that the quotation in the majority opinion from Black on Rescission and Cancelation is not only in conflict with the statement of the rule quoted from Professor Williston, but that it is in harmony with the position taken by myself.

The majority holds that there is no reason for refusing to apply to this case "the well-settled rule against the admission of parol testimony to add to or vary the terms of a written contract." I do not understand that there was any effort on the part of respondent to apply such a rule. This is in the nature of an action for money had and received. In order to recover, it was not necessary to add to or vary any contract. The action was not based on any written contract. The action was for the recovery of money paid by respondent to appellants, for which, on account of the mutual rescission of the contract for the sale of the land, respondent had received no consideration. The original contract was rendered wholly nugatory by the rescission agreement, and the rescission agreement certainly contained no reference to repayment to respondent. It is respondent's contention, to which I agree, that the rescission agreement contained no terms of settlement whatever, in which case the rule of law I contend for applies, and re-

spondent is entitled to recover back his payments, less the rental value of the land. I see, therefore, no question of adding to or varying the terms of any contract.

The majority opinion states that the rule of law applicable is ''the rule adopted by some of the courts that holds the vendor to an implied liability to refund in case of a mutual agreement to rescind a contract for the sale of real property.'' With this rule, I am in thorough accord. It is what I am contending for. I have insisted all along that in this case we have simply a question of fact for determination, and that is whether the rescission agreement is a naked, mutual rescission, or whether it contains any terms of settlement. If the rescission agreement contain express terms of settlement, the parties have settled their rights, and the conclusion reached by the majority is correct. On the other hand, if the rescission agreement did not expressly determine the rights of the parties, in my opinion the majority view is wrong. And, since the majority takes the position that the rescission agreement determined the rights of the parties, it strikes me that the first position of the majority, in which they are supported by Professor Williston, is unnecessary to a determination of the question before us.

I am authorized to say that Mr. Chief Justice Budge concurs with me in this opinion.